**WELLS DAIRY, INC., Appellant,**

v.

**AMERICAN INDUSTRIAL REFRIGERATION, INC., Refrigeration Valves and Systems Corporation, and O.H. Livermore Construction, Inc., Appellees.**

**The Pillsbury Company, Appellee,**

v.

**Wells Dairy, Inc., Appellant.**

No. 03–1199.

Supreme Court of Iowa.

Dec. 10, 2004.

Paul T. Falk, Steven R. Johnson and David C. Lechner of Falk Johnson LLC, Chicago, Illinois, and Daniel B. Shuck, Jeff W. Wright and Jeana L. Goosman of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, and Juli Wilson Marshall, Julie D. Bailey, Mary Rose Alexander and Leslie N. Rosen, of Latham & Watkins LLP, Chicago, Illinois, for appellant.

John D. Mayne and Missy J. Denton of Mayne, Marks & Madsen, L.L.P., Sioux City, and Lindsay G. Arthur, Jr., of Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for appellee Refrigeration Valves and Systems Corporation.

Matthew T.E. Early of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, and Michael D. Hutchens of Meagher & Geer, PLLP, Minneapolis, Minnesota, for appellee American Industrial Refrigeration, Inc.

Marci I. Iseminger of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen, P.C., Sioux City, and William J. Cremer, Edmund J. Siegert and Bradley M. Burd of Cremer, Kopon, Shaughnessy & Spina, LLC, Chicago, Illinois, for appellee Pillsbury Co.

CADY, Justice.

This is an interlocutory appeal from a district court order granting appellees' (American Industrial Refrigeration, Inc. (AIR) and Refrigeration Valves and Systems Corp. (RVS)) motion to compel production by appellant (Wells Dairy) of a report by two investigators from the University of Wisconsin. Wells Dairy had refused to produce the report, claiming it was privileged under the work-product doctrine and self-critical-analysis privilege. After the appeal was fully briefed, appellant's counsel inadvertently disclosed the report to appellees AIR and RVS along with 30,000 pages of other documents in response to RVS's discovery requests. After Wells Dairy's disclosure, RVS moved to dismiss the appeal, claiming the issue in the appeal was moot. On our review, we affirm the district court order.

## I. Background Facts and Proceedings.

This case arose out of an explosion that occurred at Wells Dairy's South Ice Cream Plant (SICP) in LeMars. Appellee O.H. Livermore, Inc. was the general contractor when the SICP was built in 1991. Appellees RVS and AIR designed the SICP's

ammonia refrigeration system. On March 29, 1999, the SICP's refrigeration system sprung an ammonia leak, which caused an explosion and fire.

Sometime after the explosion, Douglas Wells, chief operating officer and senior vice president of marketing for Wells Dairy, retained Drs. Douglas T. Reindl and Frederick T. Elder of the University of Wisconsin "to investigate operations of the SICP's refrigeration system." Mr. Wells stated in an affidavit that he

> sought a consultant who could do an evaluation of Wells Dairy's SICP's refrigeration system, which was the subject of the claims, to assist [him] as the person responsible for addressing these issues at Wells Dairy in evaluating and responding to the legal claims and the status of the refrigeration at issue.

He further stated that "[a]t the time he retained Drs. Reindl and Elder, it was [his] expectation that any report would be kept confidential and not used in any litigation." Drs. Reindl and Elder conducted "[a] critical review of refrigeration staffing at Wells' Dairy Inc." and prepared a 107–page report (the Wisconsin report), the stated goal of which was to answer three questions: (1) "Is refrigeration a *core competency* for Wells' Dairy?"; (2) "How competent is Wells' Dairy, Inc. in the area of refrigeration?"; and (3) "Looking toward the future, what refrigeration capabilities should Wells' possess?".

As a result of the explosion, two lawsuits arose. Wells Dairy filed suit against the appellees on March 26, 2001 for breach of contract, negligence, and strict products liability. On August 8, 2002, the Pillsbury Company sued Wells Dairy for breach of their production contract and negligence. The district court consolidated the two cases for purposes of discovery.

On May 30, 2001, AIR served a request for production of documents upon Wells Dairy, requesting production of, inter alia:

> All reports, analyses, inspections, or other documents in regard to complaints or other defects in the work, materials, or project performance;
>
> . . . .
>
> Any written reports prepared as a result of any investigation relating to the facts and allegations related to this lawsuit.
>
> . . . .
>
> All written notes, memoranda, reports or other documents which in any way relate to the project and which were prepared by or with the assistance or input of a retained consultant or expert witness.
>
> . . . .
>
> All documents not specifically requested by these document requests but which nonetheless refer or relate to the project or incident.

On December 27, 2001, Wells Dairy objected to the request in part on the grounds that it asked for information prepared in anticipation of litigation.

During the deposition of Wells Dairy's refrigeration engineer, Donald Palmer, on April 23, 2003, AIR learned of the existence of the Wisconsin report. Counsel for Wells Dairy objected to AIR's questioning of Mr. Palmer regarding the substance of the report "on the basis of the self-critical-analysis privilege." Accordingly, AIR, joined by RVS, moved to compel production of the Wisconsin report. Wells Dairy resisted the motion, asserting that the Wisconsin report was work product protected under Iowa Rule of Civil Procedure 1.503(3) and that the report was also protected under the self-critical-analysis privilege.

On July 2, 2003, the district court granted the motion to compel and ordered production of the report within twenty days of its order. Wells Dairy applied for interlocutory appeal. This court granted the application and stayed the district court's order compelling production of the report. After the appeal was fully briefed, Wells Dairy inadvertently disclosed the Wisconsin report. RVS moved to dismiss the appeal on mootness grounds.

## II. Motion to Dismiss Appeal.

■ RVS asserts Wells Dairy waived its work-product privilege when it produced the disputed report during the course of the appeal. Consequently, it claims that the interlocutory appeal no longer presents a justiciable controversy and that it must be dismissed as moot. Wells Dairy claims the appeal is not moot because inadvertent disclosure of a document cannot constitute a waiver of the work-product privilege.

We have not previously considered how the work-product doctrine is affected by the inadvertent disclosure of documents or materials. Our consideration of waiver of the work-product privilege has been limited to subject-matter waiver. *See Exotica Botanicals, Inc. v. Terra Int'l, Inc.*, 612 N.W.2d 801 (Iowa 2000) (concerning whether disclosure of the general subject matter of documents constitutes waiver of the work-product privilege).

We understand the nature and scope of the problems of inadvertent disclosure of discovery materials for trial lawyers.[1] We also recognize that courts from other jurisdictions have taken divergent paths in their efforts to address the issue.[2] Moreover, some of these efforts are complicated because the ultimate resolution can often rest with the formulation of protective relief, considering the contents of the documents have been disclosed.

■ Notwithstanding, it is only necessary to address the issue of inadvertent disclosure in this case if the underlying disputed documents or materials are protected by the privilege. A document must first be privileged to support any claim for protective relief due to inadvertent disclosure. Thus, the substantive issue raised on appeal in this case also relates to the mootness issue and would be dispositive of the inadvertent-disclosure issue if resolved adversely to Wells Dairy. Because we

---

1. " 'The inadvertent production of a privileged document is a specter that haunts every document intensive case.' " *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 175 (C.D.Cal.2001) (quoting *FDIC v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 479–80 (E.D.Va.1991)); *see* Note, *Inadvertent Disclosure of Documents Subject to the Attorney–Client Privilege*, 82 Mich. L.Rev. 598, 599 (1983) ("Privileged documents can easily slip through a screening procedure into adversaries' hands. This problem has become increasingly common as litigation and document productions grow in size."). The increased incidents of inadvertent disclosure have generally been attributed to the expanded discovery rules and the existence of a greater number of copies of documents due to the low cost of photocopying. John T. Hundley, *"Inadvertent Waiver" of Ev-*

*identiary Privileges: Can Reformulating the Issue Lead to More Sensible Decisions?*, 19 S. Ill. U. L.J. 263, 264 (1995) [hereinafter Hundley].

2. Generally, three lines of authority have emerged to resolve disputes over the inadvertent disclosure of privileged documents. *See* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2016.2, at 241–45 (2d ed.1994) (listing the strict, lenient, and middle-of-the-road approaches); John T. Hundley, *Waiver of Evidentiary Privilege by Inadvertent Disclosure—State Law*, 51 A.L.R.5th 603, 634 (1997) (same); Hundley, 19 S. Ill.U.L.J. at 266–68 (same). Another thoughtful approach considers the issue under the principles of equitable estoppel instead of waiver. *See id.* at 280–302.

ultimately conclude that the district court correctly decided that the disputed document in this case was not privileged, we find it unnecessary to address the inadvertent-disclosure claim further. Additionally, we observe that the parties have fully briefed the privilege issue, and judicial resources would be conserved by deciding the case on the question of the existence of a privilege.

## III. Standard of Review.

■ As we have previously explained, On review of a district court's ruling on a discovery matter, we afford the district court wide latitude. We will reverse a ruling on a discovery matter only for an abuse of discretion. "A reversal of a discovery ruling is warranted when the grounds underlying a district court order are clearly unreasonable or untenable." "A ruling based on an erroneous interpretation of a discovery rule can constitute an abuse of discretion." *Exotica Botanicals, Inc.*, 612 N.W.2d at 804 (citations omitted).

## IV. Work–Product Doctrine.

Iowa Rule of Civil Procedure 1.503(3) creates a qualified privilege for trial preparation materials:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under rule 1.503(1) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the party seeking discovery is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The pivotal issue in this appeal is whether the Wisconsin report was "prepared in anticipation of litigation" so as to constitute work product protected by rule 1.503(3).

The district court held the Wisconsin report "was prepared for business purposes and not in anticipation of litigation" and was thus not work product. In its conclusions of law, the court stated that to determine whether documents were prepared in anticipation of litigation,

the Court examines the claim in light of the nature of the document and the factual situation in the particular case to determine whether the document can clearly be said to have been prepared or obtained because of the prospect of litigation.

The court cited the Eighth Circuit case of *Simon v. G.D. Searle & Co.*, which quoted the following test from the Wright and Miller treatise on federal practice and procedure:

"[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation."

816 F.2d 397, 401 (8th Cir.1987) (quoting 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2024, at 198–99 (2d ed.1994) [hereinafter Wright & Miller]) (additional citations omitted). Because the parties dispute whether the district court applied the correct test, we must now ascertain what is the proper test for whether a document was prepared in anticipation of litigation under Iowa Rule of Civil Procedure 1.503(3).

*Ashmead v. Harris* was the case in which we first addressed the meaning of the phrase "prepared in anticipation of litigation." In *Ashmead,* the issue was "whether written materials prepared by a liability insurer in a routine investigation following an automobile accident were 'prepared in anticipation of litigation.'" 336 N.W.2d 197, 198 (Iowa 1983). After noting that cases interpreting the Federal Rules of Civil Procedure serve as a guide in interpreting the Iowa Rules, we observed that the Wright and Miller test was the leading "test that ha[d] emerged in federal decisions interpreting rule 26(b)(3)." *Id.* at 200 (citations omitted). Turning to the issue of the insurer's investigation materials, we explained,

> It does not matter that the investigation is routine. Even a routine investigation may be made in anticipation of litigation. Thus a document prepared in the regular course of business may be prepared in anticipation of litigation when the party's business is to prepare for litigation.

> We conclude that a routine investigation of an accident by a liability insurer is conducted in anticipation of litigation within the meaning of Iowa R. Civ. P. 122(c) [now rule 1.503(3)]. Even though litigation may not be imminent, the primary purpose of the investigation is to be prepared to defend a third party claim.

*Id.* at 200–01 (citations omitted). We rejected a test for "prepared in anticipation of litigation" that would have required the document to be prepared when there was "a substantial probability of imminent litigation" in order to be protected. *Id.* at 201 (citing *Miles v. Bell Helicopter Co.,* 385 F.Supp. 1029, 1033 (N.D.Ga.1974)). Instead, we said, "We agree with the courts that find it sufficient if the primary motivating purpose behind the creation of

the document was to aid in possible future litigation." *Id.* (citing *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.1981)).

Two years after *Ashmead,* in *Schaffer v. Rogers,* we were faced with the issue of whether materials prepared by the Internal Affairs Unit of the Des Moines Police Department were prepared in anticipation of litigation within the meaning of rule 122(c), which is now rule 1.503(3). 362 N.W.2d 552, 553 (Iowa 1985). The district court found the materials were not prepared in anticipation of litigation because "the IAU investigation was conducted in the ordinary course of police department business." *Id.* at 555. We concluded this was error and "reiterate[d] the standard adopted in *Ashmead* that the determinative issue is whether the primary purpose for the creation of the materials in question was to prepare for litigation." *Id.* (citing *Ashmead,* 336 N.W.2d at 201). Thus, we again recognized that "prepared in the ordinary course of business" and "prepared in anticipation of litigation" are not mutually exclusive concepts. *See generally* Thomas Wilson, Note, *The Work Product Doctrine: Why Have an Ordinary Course of Business Exception?,* 1988 Colum. Bus. L.Rev. 587.

Since *Schaffer,* we have reiterated the *Ashmead* "primary-purpose" test twice more. *See Squealer Feeds v. Pickering,* 530 N.W.2d 678, 687 (Iowa 1995) ("[I]f the 'primary motivating purpose' in preparing the documents is to 'aid in possible future litigation,' the documents are prepared in anticipation of litigation." (quoting *Ashmead,* 336 N.W.2d at 201)); *Shook v. City of Davenport,* 497 N.W.2d 883, 887 (Iowa 1993) ("[T]he determinative issue is whether the primary motivating purpose for the creation of the materials in question was to prepare for litigation." (citing *Ashmead,* 336 N.W.2d at 201)). Many courts apply the same test. *See, e.g., Na-*

*vigant Consulting, Inc. v. Wilkinson,* 220 F.R.D. 467, 477 (N.D.Tex.2004) ("[A] document is entitled to work product protection if 'the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" (Citation omitted.)); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 219 F.R.D. 396, 400 (E.D.Tex.2003) (stating a document is prepared in anticipation of litigation if "'the primary motivating purpose behind the creation of the document was to aid in possible future litigation'" (quoting *In re Kaiser Aluminum & Chem. Co.,* 214 F.3d 586, 593 (5th Cir.2000))); *United States ex rel. (Redacted) v. (Redacted),* 209 F.R.D. 475, 480 (D.Utah 2001) ("If it appears that materials were prepared for mixed purposes, the privilege is available only if 'the primary motivating purpose behind the creation of the [materials was] to assist in pending or impending litigation.'" (Citation omitted.)); *Coltec Indus., Inc. v. Am. Motorists Ins. Co.,* 197 F.R.D. 368, 371–72 (N.D.Ill.2000) ("'[I]n order to establish work product[] protection for a document, a discovery opponent must show that "the primary motivating purpose behind the creation of a document ... must be to aid in possible future litigation," under circumstance[s] where the discovery opponent can show "objective facts establishing an identifiable resolve to litigate."'" (Citation omitted.)); *Disidore v. Mail Contractors of Am., Inc.,* 196 F.R.D. 410, 413 (D.Kan.2000) ("The court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product."); *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 190 F.R.D. 532, 535 (S.D.Ind.1999) ("[T]he court must determine whether 'the *primary motivating purpose* behind the creation of a document or investigative report [was] *to aid in possible future litigation.*'" (Citation omitted.)); *Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618, 628 (D.Colo.1998) ("[T]he work product privilege is available only if the primary motivating purpose behind the creation of the document was to assist in pending or impending litigation." (Citation omitted.)); *Cooper Hosp./ Univ. Med. Ctr. v. Sullivan,* 183 F.R.D. 119, 132 (D.N.J.1998) ("In order to receive the protection of the work-product doctrine, a document must have been prepared primarily in anticipation of litigation." (citing Fed.R.Civ.P. 26(b)(3); *United States v. Rockwell Int'l,* 897 F.2d 1255, 1265 (3d Cir.1990))); *Smith v. Diamond Offshore Drilling, Inc.,* 168 F.R.D. 582, 584 n. 3 (S.D.Tex.1996) (stating that the key consideration is whether "'the primary motivating purpose behind the creation of the document was to aid in possible future litigation'" (citation omitted)); *Griffith v. Davis,* 161 F.R.D. 687, 698 (C.D.Cal.1995) ("The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the *primary* motivating purpose behind the creation of the materials must be as an aid in possible future litigation." (Citations omitted.)); *Blockbuster Entm't Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 404 (M.D.La.1992) ("[T]he general rule is that litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." (Footnote omitted.)); *In re Atl. Fin. Mgmt. Sec. Litig.,* 121 F.R.D. 141, 144 (D.Mass.1988) ("The essential question is what was the 'primary motivating purpose behind the creation of the document.'" (quoting *United States v. Gulf Oil Corp.,* 760 F.2d 292, 295 (Temp.Emer.Ct.App.1985))); *Janicker ex rel. Janicker v. George Washington Univ.,* 94 F.R.D. 648, 650 (D.D.C.1982) ("While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report

must be to aid in possible future litigation." (Citation omitted.)); *Ex parte Cryer*, 814 So.2d 239, 247 (Ala.2001) (" '[T]he primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation.' " (Citation omitted.)); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 784 (Tenn.Ct.App.1999) ("Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document is to aid in possible future litigation." (Citation omitted.)); *In re Maher*, 143 S.W.3d 907, 912 (Tex.App.2004) ("For the privilege to apply, preparation for litigation must be the primary motivating purpose underlying the creation of the document." (Footnote omitted.)); *Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 805 P.2d 164, 170 (Utah 1990) ("An inquiry to determine whether a document was prepared in anticipation of litigation should focus on the " 'primary motivating purpose behind the creation of the document.' " Under this standard, 'if the primary purpose behind the creation of the document is not to assist in pending or impending litigation,' then work product protection is not justified." (Citations omitted.)); *West Virginia ex rel. Allstate Ins. Co. v. Madden*, 215 W.Va. 705, 601 S.E.2d 25, 35 (2004) (" '[T]o determine whether a document was prepared in anticipation of litigation and, is therefore, protected from disclosure under the work product doctrine, the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation.' " (Citations omitted.)).

In recent years, however, the primary-purpose test has come under criticism. In *United States v. Adlman*, the Second Circuit Court of Appeals rejected the primary-purpose test, describing it as "a formulation that would potentially exclude documents containing analysis of expected litigation, if their primary ... purpose is to assist in making [a] business decision." 134 F.3d 1194, 1198 (2d Cir.1998). The court explained

> [T]he policies underlying the work-product doctrine suggest strongly that work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision. Framing the inquiry as whether the primary or exclusive purpose of the document was to assist in litigation threatens to deny protection to documents that implicate key concerns underlying the work-product doctrine.

*Id.* at 1199. The court held the proper test is whether " 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.' " *Id.* at 1202 (quoting 8 Wright & Miller § 2024, at 343).

> Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under [the "because-of"] formulation merely because it is created in order to assist with a business decision.

*Id.* However, the court cautioned that this test

> withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.... Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created "because of" actual or impending litigation.

*Id.* (citations omitted). Thus, in essence, the Second Circuit's approach asks,

"Would the document have been prepared but for the prospect of litigation?" *See id.* at 1204. If the answer is yes, the document was not prepared in anticipation of litigation; if the answer is no, it was.

Other decisions have followed the Second Circuit's lead and abandoned the primary-purpose test in favor of the because-of test. For example, in *United States v. ChevronTexaco Corp.*, the court adopted the *Adlman* approach, explaining,

> An attorney's (or a party's) reasoning or research (factual or legal) about anticipated litigation should not be discoverable simply because the work also had to be undertaken to facilitate or consider a business transaction. The expectation of litigation is either real or it is not. Whether the party prepared for that litigation before conducting a transaction (to inform its business affairs) or implemented the transaction "in the dark" and then prepared for the litigation that would surely arise from it does not alter the imminence or "realness" of the expectation of litigation. Additionally, refusing to protect litigation analyses prepared prior to implementing a transaction will discourage parties from making every effort to structure their deals in unobjectionable ways (to the extent possible) and could needlessly increase litigation.
>
> Thus, we agree with the Second Circuit that, except where a document would have been generated in the normal course of business even if no litigation was anticipated, the work product doctrine can reach documents prepared "because of litigation" even if they were prepared in connection with a business transaction or also served a business purpose.

241 F.Supp.2d 1065, 1082 (N.D.Cal.2002).

Other courts have agreed that the proper test is Wright and Miller's because-of test, but have formulated different inqui-ries to ascertain whether that standard is met. For example, in *Hertzberg v. Veneman,* the court stated that to meet the because-of test, "a party 'must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable' in the circumstances." 273 F.Supp.2d 67, 79 (D.D.C.2003) (citing *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998)). In contrast, in *JumpSport, Inc. v. Jumpking, Inc.,* the same judge who authored *United States v. ChevronTexaco Corp.* five months earlier held that whether a document was prepared in anticipation of litigation should be determined using a two-stage test:

> In the first stage, the court should determine whether the party trying to invoke work product protection has shown that the prospect of litigation was a substantial factor in the mix of considerations, purposes, or forces that led to the preparation of the document. If, but only if, the party trying to invoke the protection makes this showing, the court proceeds to the second stage of the analysis. In this second stage, the court focuses on the policy objectives that the work product doctrine has been developed to promote—then determines whether (and to what extent) denying Rule 26(b)(3)'s protections to the document would harm those objectives (or, the extent to which conferring that protection would advance the policy purposes that inform the work product doctrine.) The court would conclude that the document comes within the ambit of the Rule (was "prepared in anticipation of litigation") on a showing that a contrary conclusion would likely frustrate or interfere (more than minimally) with the promotion of the principal objectives this doctrine is designed to serve.

213 F.R.D. 329, 330–31 (N.D.Cal.2003).

We initially note that our approach is not inconsistent with *Adlman's*

holding that a document "does not lose protection ... merely because it is created in order to assist with a business decision." 134 F.3d at 1202. We have long recognized that documents can be prepared for business purposes and still be prepared in anticipation of litigation. *See Schaffer*, 362 N.W.2d at 555; *Ashmead*, 336 N.W.2d at 200–01. However, in reviewing the decisions attempting to define what it means for something to be prepared in anticipation of litigation, it becomes apparent that our primary-purpose test is unduly restrictive given the language and purpose of our rule. Rule 1.503(3) merely requires a document to be prepared in anticipation of litigation. It does not require the primary purpose motivating the creation of the document to be to aid in litigation. *Cf. Adlman*, 134 F.3d at 1198 ("Nowhere does Rule 26(b)(3) state that a document must have been prepared *to aid* in the conduct of litigation in order to constitute work product, much less *primarily or exclusively* to aid in litigation. Preparing a document 'in anticipation of litigation' is sufficient."). Thus, we find the Wright and Miller test is more consistent with the language and purposes of rule 1.503(3). Accordingly, we hold that the overarching inquiry in determining whether a document was prepared in anticipation of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 Wright & Miller § 2024, at 198–99. If documents "would have been created in essentially similar form irrespective of the litigation[,] ... it [cannot] fairly be said that they were created 'because of' actual or impending litigation." *Adlman*, 134 F.3d at 1202 (citation omitted).

■ Thus, we conclude the district court ultimately applied the correct test. We must next address Wells Dairy's contention that the district court erred in applying the test. In applying the facts to reach its conclusion, the district court explained,

> [T]he document was prepared for business purposes and not in anticipation of litigation. Although the investigation and report was ordered by Wells after the explosion, its stated purpose and goals have nothing to do with the explosion or the manner in which litigation should be addressed. Rather, the report lists three project goals that concern the business of Wells Dairy, not the explosion. When the explosion is mentioned in the report, the consultant qualifies his observation by stating "investigating and evaluating this incident was not directly in the investigator's scope of work ... [.]" Under these circumstances, the document was clearly prepared for business purposes, not in anticipation of litigation.

In other words, the district court concluded that the Wisconsin report would have been prepared in essentially similar form irrespective of the prospect of litigation. *See id.* Thus, it could not fairly be said that the Wisconsin report was prepared because of impending litigation. *See id.* Accordingly, it was not prepared in anticipation of litigation and was not entitled to protection under the qualified privilege of rule 1.503(3).

Wells Dairy argues that the district court abused its discretion in reaching this conclusion because it disregarded Douglas Wells's affidavit, in which he stated that he sought a consultant to help him respond to legal claims. However, the district court did not disregard Mr. Wells's affidavit; it acknowledged it but did not give it much weight in view of the other circumstances indicating the report was prepared for business reasons. The court concluded,

based on its in camera review of the Wisconsin report, that "[t]he investigative report itself does not support this statement and does not address this goal." As previously noted, we afford the district court wide latitude on discovery rulings and will not reverse them unless their underlying grounds are clearly unreasonable or untenable. *Exotica Botanicals, Inc.*, 612 N.W.2d at 804 (citations omitted). Having conducted our own in camera review of the Wisconsin report, we cannot say that the district court's conclusion was clearly unreasonable or untenable. Accordingly, we affirm the district court's order compelling production of the report.

## V. Self–Critical–Analysis Privilege.

 Wells Dairy alternatively argues that the Wisconsin report is protected from disclosure under the self-critical-analysis privilege. Wells Dairy, as the party "resisting discovery through assertion of privilege[,] has the burden of showing that a privilege exists and applies." *Carolan v. Hill*, 553 N.W.2d 882, 886 (Iowa 1996) (citing *Hutchinson v. Smith Labs., Inc.*, 392 N.W.2d 139, 141 (Iowa 1986)). "An asserted privilege is narrowly construed because it is an exception to our rules governing discovery." *Id.* (citing *Hutchinson*, 392 N.W.2d at 141). The district court held the report was not protected by the self-critical-analysis privilege, finding "neither Iowa statutory nor case authority to extend a self-critical-analysis privilege to a dairy business."

The self-critical-analysis privilege is a relatively new privilege "grounded on the basic notion that " 'disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law.' " " Donald P. Vandegrift, Jr., *The Privilege of Self–Critical Analysis: A Survey of the Law*, 60 Alb. L.Rev. 171, 176 (1996) (quoting *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 893 F.Supp. 6, 7 (E.D.N.Y.1995)). It has not gained much support from the federal courts due to the Supreme Court's "reluctance 'to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself.' " *Id.* at 175 (quoting *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571, 582 (1990)). Another reason to reject the privilege is "the general rule that the public " 'has a right to every man's evidence.' " " Note, *The Privilege of Self–Critical Analysis*, 96 Harv. L.Rev. 1083, 1083–84 (1983) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884, 891 (1950)). According to Wright and Miller,

> In recent years there has been some recognition by federal courts of a privilege for certain corporate records under the rubric of "self-evaluative reports." Although the term and its usage are imprecise, it is generally used to refer to records required to be kept by some administrative regulation and that may contain admissions or statistics of use to an opposing litigant in a suit arising under the regulatory scheme of which the report is a part. The decisions are divided, and there seems little justification for creating a new privilege if the matter sought to be protected falls outside the required reports privilege.

Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5431, at 524 (Supp.2004).

> Those courts that recognize a federal self-critical analysis privilege generally require three criteria to be met for the information to qualify for protection: first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the

public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed.

*Torres v. Kuzniasz,* 936 F.Supp. 1201, 1214–15 (D.N.J.1996) (citations omitted). "Even where a self-critical analysis privilege has been held to exist, . . . that privilege is clearly limited to expressions of opinion or recommendations, and not to facts underlying such opinions or recommendations." *Price v. County of San Diego,* 165 F.R.D. 614, 619 (S.D.Cal.1996) (citing *Granger v. Nat'l R.R. Passenger Corp.,* 116 F.R.D. 507, 510 (E.D.Pa.1987)).

Deciding whether to recognize this privilege involves balancing "the public need for all available evidence . . . against the public interest in confidentiality." Note, 96 Harv. L.Rev. at 1084. "The balancing of conflicting interests of this type is particularly a legislative function." *Univ. of Pa.,* 493 U.S. at 189, 110 S.Ct. at 582, 107 L.Ed.2d at 582. Our legislature has recognized the self-critical-analysis privilege in the context of medical peer review committees. *See* Iowa Code § 147.135(3) (2003). We decline to judicially extend the self-critical-analysis privilege, and we leave it to the legislature to do so if it finds the competing policy concerns weigh in favor of such an extension of the privilege.

## VI. Conclusion.

For the foregoing reasons, we conclude that the Wisconsin report is not protected from disclosure by either rule 1.503(3) or the self-critical-analysis privilege. The district court did not abuse its discretion in determining that the report was not prepared in anticipation of litigation. Moreover, we find no error in its refusal to extend the self-critical-analysis privilege, which is solely a creature of statute in Iowa, to the report. Thus, the district court's order compelling discovery of the Wisconsin report is affirmed.

**AFFIRMED.**