# IN THE SUPREME COURT OF IOWA

No. 06–1939

Filed October 30, 2009

**JAMES KEEFE** and **KATHY KEEFE**,

 Appellees,

vs.

**RENALD BERNARD** and **McFARLAND CLINIC, P.C.**,

 Appellants.

---

Appeal from the Iowa District Court for Story County, Timothy J. Finn, Judge.

Interlocutory appeal of order compelling discovery in medical malpractice action. **DISTRICT COURT ORDER AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Robert C. Rouwenhorst and Susanna Brown of Rouwenhorst & Brown, P.C., West Des Moines, for appellants.

Thomas P. Slater of Slater & Norris, P.L.C., West Des Moines, for appellees.

**STREIT, Justice.**

In this interlocutory appeal, we decide if the defendants in a medical malpractice action must produce a memorandum constituting attorney work product as a sanction for violation of an Iowa statute requiring notice before consultation with a plaintiff's treating physician. The memorandum memorialized a meeting between defendant's counsel and one of plaintiff's treating physicians, which took place without notice to the plaintiff. The district court granted plaintiffs' motion to compel production of the memorandum. On interlocutory appeal, we hold the memorandum is not protected by the attorney-client privilege but is protected by the attorney-work-product doctrine. We also hold counsel for defendants violated the notice provision in Iowa Code section 622.10(3)(*e*) (2005) and the appropriate sanction is partial disclosure of the memorandum.

### I. Background Facts and Proceedings.[1]

This is a medical malpractice action brought by James and Kathy Keefe against Dr. Renald Bernard, M.D. and his employer, McFarland Clinic, P.C. Dr. Bernard treated James Keefe for a shoulder injury. He eventually referred Keefe to an orthopedic surgeon in the clinic, Dr. David Sneller, M.D. Dr. Sneller examined Keefe before referring him to another specialist.

Robert C. Rouwenhorst represents Dr. Bernard and McFarland Clinic. The Keefes are represented by Thomas P. Slater. In preparation for trial, Rouwenhorst met with Dr. Sneller and discussed the treatment and injury that are the subject of this litigation. Rouwenhorst authored a memorandum to memorialize his recollection of the meeting. This

---

[1]The facts are provided solely for the purpose of resolving this motion.

meeting took place without the knowledge or consent of Slater or the Keefes.

Slater learned of the meeting between Rouwenhorst and Dr. Sneller and the memorandum during a pretrial deposition of Dr. Bernard. Dr. Bernard stated he had read the memorandum prepared by Rouwenhorst prior to the deposition and that the memorandum attributed a statement to Dr. Sneller to the effect that Dr. Bernard could have made the referral earlier than he did.[2]

After Dr. Bernard's deposition, Rouwenhorst included Dr. Sneller in the designation of defendant's expert witnesses. Slater then deposed Dr. Sneller and sought discovery of the matters Dr. Sneller discussed with Rouwenhorst. Rouwenhorst repeatedly objected to the questioning and directed Dr. Sneller not to answer. In response to a separate line of questioning by Slater, Dr. Sneller testified he did not "really form" an

---

[2]During the deposition of Dr. Bernard, the following exchange occurred in response to questioning by attorney Slater:

Q: All right. Did Dr. Sneller ever call you and tell you what he had found in respect to this patient? A: No, he never. But I knew -- to answer a little bit into your question, I knew that he met with Bob, and I've seen the report. Bob talked to me about the report, you know, of the chart, what he looks at my treatment, you know, on that.

Q: What conversation did you have with Dr. Sneller about the meeting he had with Bob? A: I just said to him thank you to have taken the time, you know, with Bob to review the chart, you know, on that. And I think in gross, I want the report -- when Bob showed me the report in gross --

Q: What report are you talking about? Are you just talking about the medical record? MR. ROUWENHORST: It's a memo that summarizes my conversation with Dr. Sneller. A: Yeah. And I said thank you to have that done because I feel it was a good report. I feel it was a good report. I feel it was -- he was objective and, you know, I don't think he did blame me on some, on something specifically, you know, on that.

Q: Did he blame you on anything? A: No, he didn't. He said he could have -- he could have refer [sic] a little bit before, a couple two to three weeks before. You know, a referral to a doctor than [sic] I have referred. But he said the outcome will be about the same.

opinion whether Dr. Bernard should have referred James Keefe to him earlier than he did. Instead, he testified he was only concerned about treating his patient at that time.

Rouwenhorst later refused to provide Slater with a copy of the memorandum, claiming it was protected by the attorney-client privilege and the attorney-work-product doctrine. The Keefes filed a motion to compel production of the memorandum and "the mental impressions and opinions of Dr. Sneller." The district court held a hearing and conducted an *in camera* inspection of the memorandum. The ruling by the district court only addressed discovery of the memorandum. The court granted the motion to compel because it held the memorandum:

> is not privileged or otherwise protected from discovery either as an attorney/client communication or under a theory of "joint representation" or under "work product privilege" or otherwise protected from discovery and is in fact discoverable under the Iowa Rules of Civil Procedure.

Dr. Bernard and the McFarland Clinic sought, and we granted, interlocutory review.

## II. Standard of Review.

Our review of a ruling by the district court on a motion to compel discovery is for abuse of discretion. *See Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 43 (Iowa 2004). " 'A ruling based on an erroneous interpretation of a discovery rule can constitute an abuse of discretion.' " *Exotica Botanicals, Inc. v. Terra Int'l, Inc.*, 612 N.W.2d 801, 804 (Iowa 2000) (quoting *Shook v. City of Davenport*, 497 N.W.2d 883, 885 (Iowa 1993), *overruled on other grounds by Wells Dairy*, 690 N.W.2d at 44–47). To the extent a challenge to a trial court ruling on the admissibility of evidence implicates the interpretation of a statute, our review is for errors at law. *See State v. Stone*, 764 N.W.2d 545, 548 (Iowa 2009).

### III. Merits.

**A. Statutory Physician-Patient Privilege.** Iowa Code section 622.10(1) provides that a physician or surgeon

> shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

There was no physician-patient privilege at common law, and therefore "the physician-patient privilege arises solely by virtue of section 622.10." *State v. Bedel*, 193 N.W.2d 121, 123–24 (Iowa 1971). However, the testimonial physician-patient privilege has been recognized by our legislature for over 150 years. *See* Iowa Code § 2393 (1851) (representing an early predecessor to section 622.10).

The statutory physician-patient privilege in section 622.10 prevents a physician from disclosing confidential information in "giving testimony." In *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353 (Iowa 1986), we addressed ex parte informal interviews between attorneys and treating physicians. *Roosevelt Hotel* noted the arguments that ex parte interviews save time and litigation cost and that such interviews raise the possibility of inadvertent wrongful disclosure of confidential matters. *Id.* at 357. We held section 622.10, as it existed in 1986, did not "speak to" the issue of informal interviews and therefore did not prevent them. *Id.* at 355. As a practical matter, however, doctors were often unwilling to participate in informal interviews because of the physicians' own duties of confidentiality. *Id.* at 356. Although we recognized that in practice, this reluctance might prevent ex parte interviews, we refused to hold the patient must provide a waiver that

would allow the treating physician to participate in ex parte interviews. *Id.* at 357.

In 1997, our legislature amended section 622.10 by adding subsection 3. 1997 Iowa Acts ch. 197, § 8 (codified at Iowa Code § 622.10 (1999)). Generally, subsection 3 provides a procedure for defendants in a lawsuit to informally "consult" with a plaintiff's treating physician in cases in which the plaintiff's condition is an element of the claim. Subsection 3 requires a plaintiff to execute a waiver which allows the physician to "[c]onsult with the attorney for the adverse party prior to providing testimony regarding the plaintiff's medical history and the condition alleged and opinions regarding health etiology and prognosis for the condition alleged." Iowa Code § 622.10(3)(*a*)(2).

The waiver of the physician-patient privilege for informal interviews is not unlimited. The legislature counterbalanced the waiver by requiring the defendant's counsel to provide written notice of the consultation allowed by the subsection and to allow plaintiff's counsel to be present at the consultation. *Id.* § 622.10(3)(*e*).

Section 622.10(3)(*e*) does not apply to a meeting between a physician and his or her own attorney. The language of section 622.10(3)(*e*) refers separately to the "plaintiff's physician" and the "defendant," suggesting they are not one and the same. Any other interpretation would prevent physician defendants in medical malpractice suits from consulting with their own defense attorneys and would prevent defendant or potential defendant physicians and their employers, hospitals or clinics, from obtaining effective legal representation. *See Harlan v. Lewis*, 982 F.2d 1255, 1264–65 (8th Cir. 1993) (noting that although Arkansas discovery rule was interpreted to prevent ex parte interviews with treating physicians, the language of the

rule could not be read to include consultation between a physician and the physician's own attorney because the right to counsel "is meaningless without the ability to converse freely with counsel about the representation").

The legislature did not construct a specific remedy within the statute for noncompliance with the notice requirement under section 622.10(3)(*e*).[3]  However, "trial courts have inherent power to enforce our discovery rules and have discretion to impose sanctions for a litigant's failure to obey them."  *White v. Citizens Nat'l Bank of Boone*, 262 N.W.2d 812, 816 (Iowa 1978).

Because Iowa Code section 622.10(3) provides a method for discovery of information pertinent to a pending lawsuit, we hold a trial court's discretion to impose discovery sanctions, when appropriate, applies to violations of section 622.10.  A trial court may consider a variety of sanctions, or may decide sanctions are unwarranted, based on the circumstances surrounding a violation of the notice provision in section 622.10(3)(*e*).  *See, e.g., Harlan*, 982 F.2d at 1257–58, 1261–62 (affirming monetary sanctions for ex parte contact with treating physicians and also requiring disclosure of attorney notes if treating physicians called as witness in part because of Arkansas statute interpreted to prohibit such contact); *Manion v. N.P.W. Med. Ctr. of N.E. Pa., Inc.*, 676 F. Supp. 585, 595–96 (M.D. Pa. 1987) (granting plaintiff's motion in limine to exclude plaintiff's former treating physicians from being called as expert witnesses based on defense counsel's ex parte contact with those physicians); *Younggren v. Younggren*, 556 N.W.2d

---

[3]Section 622.10(3)(*b*) provides a remedy if a plaintiff fails to sign a waiver within the prescribed time period.  Under such circumstances the court may order disclosure or compliance and failure to comply "may be grounds for dismissal of the action or any other relief authorized under the rules of civil procedure."

228, 233 (Minn. Ct. App. 1996) (holding sanction for failure to follow Minnesota statute comparable to Iowa Code section 622.10 "could include a refusal to admit [] evidence. However, the trial court is not required to impose sanctions. The trial court declined to do so in this case . . ."). As we discuss below, partial disclosure of a memorandum summarizing the consultation made in violation of the statute is an available sanction.

**B. Attorney-Client Privilege.** The Iowa legislature has codified the attorney-client privilege: Iowa Code section 622.10 bars attorneys from disclosing confidential communications. "Any confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client." *Shook*, 497 N.W.2d at 886. This privilege is "of ancient origin. It is premised on a recognition of the inherent right of every person to consult with legal counsel and secure the benefit of his advice free from any fear of disclosure." *Bailey v. Chicago, Burlington & Quincy R.R.*, 179 N.W.2d 560, 563 (Iowa 1970). The party seeking to assert the privilege bears the burden to show an attorney-client relationship existed and that the communication was made in confidence. *Id.* at 564.

Rouwenhorst asserts he is Dr. Sneller's personal attorney, and therefore section 622.10 would not prevent an ex parte informal meeting. In the alternative, Rouwenhorst asserts section 622.10 is inapplicable because he is the attorney for McFarland Clinic and Dr. Sneller is an employee of the clinic within the attorney-client privilege. He further asserts it was consistent with the attorney-client privilege to share the memorandum with Dr. Bernard because of the "joint client" exception. We hold the memorandum was not protected by the attorney-client privilege of either Dr. Sneller personally or McFarland Clinic.

1. *Personal Attorney-Client Privilege.* We question whether Rouwenhort's assertion that he is Dr. Sneller's attorney is enough to carry the burden to show an attorney-client relationship in this context. Although there may be circumstances in which a lawyer may represent two physicians individually as well as their employer, the soundness of such a claim in this particular context is brought into question by the potential conflict of interest.[4] Dr. Sneller's actions have not been implicated in the suit against Dr. Bernard and McFarland Clinic. Regardless, Dr. Sneller is entitled to consult a personal attorney without the presence of patients' attorneys. If Dr. Sneller consulted Rouwenhorst for legal advice, those past conversations must be privileged.[5] *See* Iowa Code § 622.10(1).

There has been no showing, however, that the memorandum at issue was prepared pursuant to an attorney-client consultation between Rouwenhorst and Dr. Sneller personally. Based on an *in camera* review,

---

[4]*See State v. Smitherman*, 733 N.W.2d 341, 348 (Iowa 2007) (noting conflict of interest where defense co-counsel represented prosecution witness in separate case but holding new trial was not required because defendant was not adversely affected where co-counsel withdrew); *State v. Watson*, 620 N.W.2d 233, 241–42 (Iowa 2000) (holding defense counsel had actual conflict of interest where he concurrently represented prosecution witness and ordering new trial); Iowa R. Prof'l Conduct 32:1.7 cmt. 6 ("[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.").

[5]The proper remedy for a conflict of interest between two current clients is attorney disqualification from one or both representations, not forced disclosure of the attorney's privileged conversations with either client. *See* Iowa R. Prof'l Conduct 32:1.7 cmts. 4–5 ("If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation . . . . Where more than one client is involved, whether the lawyer may continue to represent any of the clients is determined both by the lawyer's ability to comply with duties owed to the former client and by the lawyer's ability to represent adequately the remaining client or clients, given the lawyer's duties to the former client. . . . *The lawyer must continue to protect the confidences of the client from whose representation the lawyer has withdrawn.*" (emphasis added)).

the memorandum does not reflect legal advice sought by Dr. Sneller.[6] Instead, it demonstrates an investigation by Rouwenhorst into the hospital's liability for Dr. Bernard's actions. The memorandum is therefore not protected by Dr. Sneller's personal attorney-client privilege.[7] Rouwenhorst cannot claim each witness as his client to prevent factual discovery. *See Samaritan Found. v. Goodfarb*, 862 P.2d 870, 880–81 (Ariz. 1993) (holding hospital's attorney could not "silence the employees by shielding their communications in the cloak of the [personal] attorney-client privilege" where the employees were interviewed regarding what they witnessed and not their own actions and the employees did not perceive a need for legal advice); *cf.* Restatement (Third) of The Law Governing Lawyers § 14 cmt. *f,* at 130 (2000) ("Where appropriate, due consideration should be given to the unreasonableness of a claimed expectation of entering into a co-client status when a significant and readily apparent conflict of interest exists between the organization or other client and the associated person or entity claimed to be a co-client.").

2. *Corporate Attorney-Client Privilege.* Rouwenhorst argues even if his memorandum is not protected by his alleged personal representation

---

[6]The district court considered the memorandum at issue *in camera* and we have done the same. *See Wells Dairy*, 690 N.W.2d at 49; *Tausz v. Clarion-Goldfield Cmty. Sch. Dist.*, 569 N.W.2d 125, 128 (Iowa 1997).

[7]Additionally, even if the memorandum was protected by Dr. Sneller's personal attorney-client privilege, the privilege may have been waived when the memorandum was shown intentionally to Dr. Bernard or when Dr. Bernard gave deposition testimony about the substantive content of the memorandum. *See* Restatement (Third) of The Law Governing Lawyers § 79, at 596 ("The attorney-client privilege is waived if the client, the client's lawyer, or another authorized agent of the client voluntarily discloses the communication in a nonprivileged communication."). It is unlikely that Dr. Sneller and Dr. Bernard could be considered joint clients in a situation where Dr. Sneller is expressing an opinion as a subsequent treating physician and potential expert because such representation is limited by "the extent of the legal matter of common interest." Restatement (Third) of The Law Governing Lawyers § 75 cmt. *c*, at 580.

of Dr. Sneller, it is protected because Dr. Sneller is employed by Rouwenhorst's client McFarland Clinic. Therefore, we must determine whether the memorandum is protected based on McFarland Clinic's attorney-client privilege.[8]

This court has yet to address the proper test to determine when communications between legal counsel for a corporate entity and its employees or agents are privileged under the attorney-client privilege. Because a corporate entity "can only act through its agents," some communications between agents and corporate counsel must be protected if corporate entities are to have legal representation. *Samaritan Found.*, 862 P.2d at 875. Some courts have adopted a "control group" test which extends a corporate entity's attorney-client privilege to the corporate employees who are in a position to control or take a substantial part in corporate decisions. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 683, 66 L. Ed. 2d 584, 591–92 (1981). The U.S. Supreme Court, acting pursuant to federal common law, rejected this "control group" doctrine, but declined to affirmatively proscribe a test. *Id.* at 390–91, 101 S. Ct. at 683, 66 L. Ed. 2d at 592 (stating the control group test "overlooks the fact that the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice").

Other courts have also created tests for determining the limits of a corporation's attorney-client privilege. In *Harper & Row Publishers, Inc.*

---

[8]The Keefes sued Dr. Bernard and his employer, McFarland Clinic, based on vicarious liability. It is likely that Dr. Bernard and McFarland Clinic are joint clients and therefore the attorney-client privilege would not be waived by disclosure of the memorandum to Dr. Bernard. We need not reach this issue, however, because we hold below that the memorandum was not protected by McFarland Clinic's attorney-client privilege.

*v. Decker*, 423 F.2d 487 (7th Cir. 1970), *aff'd by an equally divided court*, 400 U.S. 348, 91 S. Ct. 479, 27 L. Ed. 2d 433 (1971), the Seventh Circuit rejected the "control group" test. *Harper & Row* held communications by corporate employees to legal counsel were privileged where the employee's disclosures were made at the direction of their corporate superiors and the subject matter was the "performance by the employee of the duties of his employment." 423 F.2d at 491–92. The court noted it was "not dealing in this case with the communications of employees about matters as to which they are virtually indistinguishable from bystander witnesses." *Id.* at 491. The test crafted in *Harper & Row* is often referred to as the "subject matter" test.

In *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1978) (rehearing en banc), the court adopted the "subject matter" test, but with additional limitations. *Diversified* held the attorney-client privilege applies to employee communications where:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Id.* at 609.

In *Samaritan Foundation*, the Supreme Court of Arizona considered these tests and focused on whether the subject matter of the communication concerns actions by an employee that have "exposed the corporation to liability" or whether it is "fair to characterize the employee as a 'witness' rather than as a client." 862 P.2d at 875–77. In *Samaritan Foundation*, the plaintiff had sued a hospital and physicians based on a problem during surgery. A hospital paralegal interviewed three nurses

and a scrub technician who had observed the surgery. *Id.* at 873. The Arizona Supreme Court held the memoranda were not protected by the hospital's attorney-client privilege because the nurses were interviewed as witnesses. *Id.* at 880–81.

We agree with the United States Supreme Court that the corporate attorney-client privilege should not be limited to those in the "control group." Instead, the test must focus on the substance and purpose of the communication. If an employee of a corporation or entity discusses his or her own actions relating to potential liability of the corporation, such communications are protected by the attorney-client privilege. *See Samaritan Found.*, 862 P.2d at 876 ("It is universally accepted that communications directly initiated by an employee to corporate counsel seeking legal advice on behalf of the corporation are privileged."). If, on the other hand, a corporate employee is interviewed as a "witness" to the actions of others, the communication should not be protected by the corporation's attorney-client privilege.[9]

Here, to the extent Dr. Sneller discussed his own actions and McFarland Clinic's potential liability for his actions with McFarland Clinic's attorney, Rouwenhorst, such communications are protected by McFarland Clinic's attorney-client privilege. However, to the extent Dr. Sneller discussed his observations as a witness to or expert on the effects of Dr. Bernard's treatment of the patient, his communications are not protected by McFarland Clinic's attorney-client privilege. Based on our

---

[9]When a corporate employee participates in discussions with legal counsel because of his or her position within the corporate decision making structure, not because of either the employee's own actions or what the employee has witnessed, such communications are also protected by the corporation's attorney-client privilege. *Cf. Diversified*, 572 F.2d at 609 (material protected if "not disseminated beyond those persons who, *because of the corporate structure, need to know its contents*" (emphasis added)). There has been no suggestion that Dr. Sneller was consulted in this capacity.

*in camera* review of the memorandum prepared by Rouwenhorst, we find the memorandum reflects Dr. Sneller's observations as a witness or expert regarding Dr. Bernard's treatment decisions based on his position as a subsequent treating physician. Therefore, the memorandum is not protected by McFarland Clinic's attorney-client privilege.

Because we conclude the memorandum is not protected by the attorney-client privilege, we hold Rouwenhorst was not shielded from the notice provision of Iowa Code section 622.10(3)(*e*). Even when a memorandum is not protected by the attorney-client privilege, however, it may still be protected by the attorney-work-product doctrine if prepared in anticipation of litigation. Therefore, we must consider the interaction of the attorney-work-product doctrine and non-compliance with Iowa Code section 622.10.

**C. Attorney Work Product.** Iowa Rule of Civil Procedure 1.503(3) codifies a qualified immunity from discovery of materials prepared in anticipation of litigation.[10] *Shook*, 497 N.W.2d at 886. Rule 1.503(3) [previously rule 122(*c*)] closely tracks Federal Rule of Civil Procedure 26(b)(3), "and the history and cases under the federal rule provide guidance in interpreting the Iowa counterpart." *Id.*

---

[10]The rule provides:

> Subject to the provisions of rule 1.508, a party may obtain discovery of documents and tangible things otherwise discoverable under rule 1.503(1) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the party seeking discovery is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Iowa R. Civ. P. 1.503(3).

Federal rule 26(b)(3) codifies immunity for attorney work product recognized in the landmark case of *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947). In *Hickman*, the Supreme Court recognized the privacy interests of an attorney in preparing the client's case, but stopped short of declaring attorney work product absolutely immune from discovery in all cases. *Id.* at 511, 67 S. Ct. at 394, 91 L. Ed. at 462. Instead, the Court held, "[w]here relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Id.*

Courts generally interpret *Hickman* as providing two layers of protection for attorney work product. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2026, at 396–402 (2d ed. 1994). Generally, federal rule 26(b)(3) "permits disclosure of documents and tangible things constituting attorney work product upon a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn*, 449 U.S. at 400, 101 S. Ct. at 688, 66 L. Ed. 2d at 598. However, *Hickman* and rule 26(b)(3) accord "special protection to work product revealing the attorney's mental processes." *Id.*

Like its federal counterpart, Iowa Rule of Civil Procedure 1.503(3) provides for production of "documents and tangible things" that have been "prepared in anticipation of litigation" by opposing counsel "only upon a showing that the party seeking discovery has substantial need of the materials . . . and . . . is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Iowa R. Civ. P. 1.503(3). This rule requires the court, however, to "protect against disclosure of the mental impressions, conclusions, opinions, or legal

theories of an attorney" when ordering such discovery. Iowa R. Civ. P. 1.503(3).

As was the case in *Hickman* and *Upjohn*, the Keefes are demanding discovery of attorney notes of a witness's statement created in anticipation of litigation.[11] This type of discovery has been held to be opinion work product. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). "Attorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant." *Id.*; *see also Upjohn*, 449 U.S. at 399–400, 101 S. Ct. at 687–88, 66 L. Ed. 2d at 597–98 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes . . . .").

We agree a memorandum prepared by counsel concerning counsel's recollections of an interview with a treating physician in a medical malpractice case constitutes attorney work product. Therefore, the memorandum at issue in this case constitutes attorney work product. Facts or information contained in the memorandum are discoverable upon a showing of "substantial need" and "undue hardship." However, in accordance with the two tiers of work product recognized by Iowa rule 1.503(3), we hold "so much of the work product that reflects the mental impressions or opinions of the lawyer is, for all practical purposes, absolutely immune from discovery." *Shook*, 497 N.W.2d at 886; *accord Squealer Feeds v. Pickering*, 530 N.W.2d 678, 689 (Iowa 1995) (citing *Shook*), *overruled on other grounds by Wells Dairy*, 690 N.W.2d at 44–47.

---

[11]There is no dispute the memorandum at issue in this case was produced in anticipation of litigation.

We specifically reject the claim by the Keefes that such a memorandum cannot constitute work product because the physician's statements recorded by defense counsel were initially the mental impressions of the physician. Mental impressions of an expert are discoverable under Iowa Rule of Civil Procedure 1.508, but not mental impressions that have been filtered through the mental processes of an attorney and transformed into attorney work product. We also reject the claim that a memorandum cannot qualify as attorney work product when the mental impressions and information in the memorandum emanated from a process that was not compliant with the statute governing discovery of the information. With or without the required statutory notice, the information gathered and impressions formulated became attorney work product. Therefore, the Keefes were required to make the special showing required by rule 1.503(3) for the discovery of attorney work product.[12] (We will separately consider whether noncompliance with the governing statute by an attorney serves as an additional ground to permit discovery of attorney work product.)

We first examine whether the Keefes have a substantial need for the memorandum and the information is unavailable by other means. Iowa R. Civ. P. 1.503(3); *Upjohn*, 449 U.S. at 400, 101 S. Ct. at 688, 66 L. Ed. 2d at 598. When a witness is available to provide discovery and to testify at trial, it is normally unnecessary for one attorney to gain access

---

[12]Attorney work product was not waived when Rouwenhorst showed the memorandum to Dr. Bernard. *See* Restatement (Third) of The Law Governing Lawyers § 91 cmt. *b*, at 662 ("Work product, including opinion work product, may generally be disclosed to the client . . . ."). The Keefes also argue attorney work product protection of the memorandum was waived when Dr. Bernard discussed substantive portions of the memorandum during his deposition. As will be noted below, we order partial disclosure of non-opinion work product contained in the memorandum, including the statement attributed to Dr. Sneller and referenced by Dr. Bernard in his deposition. Because Dr. Bernard disclosed only non-opinion work product, we do not address the issue of waiver. *Cf. In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988) (holding waiver applied only to non-opinion work product).

to the notes of an opposing counsel who has met with the witness in preparation for trial. *See, e.g., Baker*, 209 F.3d at 1054 ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party."); *In re Grand Jury Proceedings*, 473 F.2d 840, 849 (8th Cir. 1973) (reversing district court's order to compel discovery of attorney's recollections or written summaries of witness statements when "[o]ther than its conjecture that 'something different might have been said' the Government has offered little if any evidence upon which a finding of good cause could be predicated"). Dr. Sneller is not unavailable. Slater had the opportunity to ask Dr. Sneller if he had ever formed or expressed an opinion that Dr. Bernard should have referred the patient earlier than he did. Slater also had the opportunity to ask Dr. Sneller if Dr. Bernard could have referred James Keefe earlier.

The Keefes claim special circumstances establish a substantial need for the memorandum authored by Rouwenhorst in this case. Without the memorandum, the Keefes assert they cannot otherwise know if Dr. Sneller expressed an opinion to Rouwenhorst regarding the timing of the referral that is inconsistent with his deposition testimony. Thus, the Keefes primarily want the memorandum as a potential source to impeach Dr. Sneller with a prior inconsistent statement made to Rouwenhorst or to help show at trial that he may have changed his opinion.

We conclude the record fails to support the Keefes' claim of substantial need. The Keefes have shown no greater need for the memorandum than would ordinarily occur when one attorney discusses a case with a witness or expert outside the presence of opposing counsel. As noted above, the district court ordered the memorandum produced based on a determination that it was not protected by the attorney work

product doctrine. Because the memorandum is protected by the attorney-work-product doctrine, the district court abused its discretion in ordering the memorandum produced without a showing of substantial need. We will now consider whether the memorandum was, nonetheless, discoverable as a sanction for Rouwenhorst's violation of section 622.10(3).

**D. Remedy for Violation of Iowa Code Section 622.10.** As noted above, Iowa Code section 622.10(3) represents a compromise position reached by our legislature which allows defense attorneys to meet informally with treating physicians when a plaintiff's condition is at issue in litigation by forcing the plaintiff to provide a waiver, but imposes certain restraints. The defense attorney must provide the plaintiff's counsel with notice and an opportunity to be present at the meeting. As noted above, we hold Rouwenhorst was required to follow the notice provision in section 622.10(3)(*e*).

The Keefes assert if Rouwenhorst had properly given notice of his meeting with Dr. Sneller, the Keefes' counsel would have heard the analysis provided by Dr. Sneller and would not be in the position of seeking the memorandum containing Rouwenhorst's work product. Therefore, the Keefes argue, disclosure of the memorandum is the appropriate remedy in this circumstance.

We conclude an appropriate sanction under these circumstances is disclosure of facts, information, and statements in the memorandum attributable to Dr. Sneller, even though, as we held above, such statements are attorney work product when filtered into a memorandum by an attorney. Statements made by Dr. Sneller cannot be shielded from discovery where the Keefes' counsel should have had the opportunity to be present at the meeting. However, we hold the second tier of work

product—any "mental impressions, conclusions, opinions, or legal theories" of Rouwenhorst—are still protected from disclosure. Iowa R. Civ. P. 1.503(3); *see also Shook*, 497 N.W.2d at 886 ("[S]o much of the work product that reflects the mental impressions or opinions of the lawyer is, for all practical purposes, absolutely immune from discovery."). Therefore, we remand to the trial court for redaction of opinion work product *in camera* before production to the Keefes.

### IV. Conclusion.

The memorandum at issue is not protected from discovery by the attorney-client privilege. The memorandum is generally protected from discovery by the attorney-work-product doctrine. However, in this case we compel production of the memorandum, after redaction *in camera* for attorney mental impressions, opinions, or legal theories, as a remedy for violation of Iowa Code section 622.10. We affirm in part and reverse in part the district court. The case is remanded for further proceedings consistent with this opinion.

**DISTRICT COURT ORDER AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

All justices concur, except Baker, J., who takes no part.