# IN THE COURT OF APPEALS OF IOWA

No. 13-1627
Filed October 29, 2014


**IOWA INSURANCE INSTITUTE, IOWA DEFENSE COUNSEL ASSOCIATION, IOWA SELF INSURERS' ASSOCIATION, PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES, and IOWA ASSOCIATION OF BUSINESS AND INDUSTRY,**
　　　　Petitioners-Appellants,

**vs.**

**CORE GROUP OF THE IOWA ASSOCIATION FOR JUSTICE, CHRISTOPHER J. GODFREY, WORKERS' COMPENSATION COMMISSIONER, DIVISION OF WORKERS' COMPENSATION, and IOWA DEPARTMENT OF WORKFORCE DEVELOPMENT,**
　　　　Respondents-Appellees.
_____

　　　　Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.



　　　　An association of insurance companies appeals from a workers'

compensation commissioner's declaratory order. **AFFIRMED.**



　　　　Joseph A. Happe, Sarah K. Franklin, Stephen M. Morain, and Elizabeth R.

Meyer of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for

appellants.

　　　　R. Saffin Parrish-Sams of Soldat & Parrish-Sams, P.L.C., West Des

Moines, for appellees.



　　　　Heard by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**VAITHESWARAN, P.J.**

Under Iowa Code section 85.27(2), litigants in a workers' compensation proceeding must agree to the release of "all information . . . concerning the employee's physical or mental condition." Iowa Code § 85.27(2) (2013). At the heart of this judicial review proceeding is an employer practice of conducting surveillance of employees claiming to have sustained work-related injuries. The workers' compensation commissioner filed a declaratory order interpreting section 85.27(2) to require the release of these surveillance materials, subject to assertions of a work-product privilege.[1] We must determine (A) whether the commissioner abused his discretion in deciding to file a declaratory order and (B) whether the commissioner erred in his interpretation of the statutory language.

## I.    *Background Proceedings*

The Workers' Compensation Core Group of Iowa is a collection of attorneys

> charged with promoting the administration of justice for the public good, upholding the honor and dignity of the profession of law, advancing the cause of injured workers who must seek redress therefore under Iowa's workers' compensation laws; and upholding and improving the adversary system and right to a fair trial.

The Core Group petitioned the workers' compensation commissioner for a declaratory order interpreting Iowa Code section 85.27(2) to encompass surveillance materials.

---

[1]The work-product doctrine set forth in Iowa Rule of Civil Procedure 1.503(3) creates a qualified privilege for trial preparation materials and has been referred to as the "work-product privilege." *See Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.,* 690 N.W.2d 38, 42-43 (Iowa 2004); s*ee also Exotica Botanicals, Inc. v. Terra Int'l., Inc.,* 612 N.W.2d 801, 802 (Iowa 2000).

The Iowa Insurance Institute, Iowa Defense Counsel Association, Iowa Self Insurers Association, Property Casualty Insurers Association of America, and the National Association of Mutual Insurance Companies moved to intervene, claiming they "collectively represent the majority of workers' compensation Respondents in Iowa, and many of their legal advocates," and they "have a significant interest in protecting their rights to obtain a fair adjudication in workers' compensation proceedings, including the ability to adequately protect trial preparation materials and impeachment evidence." Their motions were granted. Following argument by counsel, the commissioner issued a declaratory order interpreting section 85.27. On judicial review, the district court affirmed the agency decision. This appeal followed.

## II. Analysis

### A. Commissioner's Decision to Issue Declaratory Order

The Iowa Administrative Procedure Act states "Any person may petition an agency for a declaratory order as to the applicability to specified circumstances of a statute, rule, or order within the primary jurisdiction of the agency." Iowa Code § 17A.9(1)(a). Section 17A.9(1)(b) sets forth certain parameters for issuance or non-issuance of declaratory orders:

> (1) An agency shall issue a declaratory order in response to a petition for that order unless the agency determines that issuance of the order under the circumstances would be contrary to a rule adopted in accordance with subsection 2.
> (2) However, an agency shall not issue a declaratory order that would substantially prejudice the rights of a person who would be a necessary party and who does not consent in writing to the determination of the matter by a declaratory order proceeding.

In accordance with this provision and section 17A.9(2), which authorizes rulemaking, the Workers' Compensation Commission adopted rules governing declaratory orders. *See* Iowa Admin Code r. 876-5.1-.13*.*

The Respondents focus on a portion of a rule prohibiting the issuance of declaratory orders in certain circumstances. The rule states in pertinent part:

> The workers' compensation commissioner shall not issue a declaratory order where prohibited by Iowa Code section 17A.9(1), and may refuse to issue a declaratory order on some or all questions raised for the following reasons:
>
> . . . .
>
> 2. The petition does not contain facts sufficient to demonstrate that the petitioner will be aggrieved or adversely affected by the failure of the workers' compensation commissioner to issue an order.
>
> . . . .
>
> 5. The questions presented by the petition would more properly be resolved in a different type of proceeding or by another body with jurisdiction over the matter.
>
> . . . .
>
> 9. The petition requests a declaratory order that would necessarily determine the legal rights, duties, or responsibilities of other persons who have not joined in the petition, intervened separately, or filed a similar petition and whose position on the questions presented may fairly be presumed to be adverse to that of petitioner.

Iowa Admin. Code r. 876-5.9(1). The Respondents assert the commissioner should have declined to issue a declaratory order under one or more of these provisions.

Our review of the agency's decision to bypass these provisions is for an abuse of discretion. *See* Iowa Code § 17A.19(10)(n) (reviewing to determine whether agency action is unreasonable, arbitrary, capricious, or abuse of discretion); Arthur Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, the Rulemaking*

*Process*, 60 Iowa L. Rev. 731, 819 (1975) (discussing review of agency refusal to rule on the merits of a petition and citing standard set forth in predecessor to subsection n); *see also City of Dubuque v. Iowa Util. Bd.*, No. 12-0789, 2013 WL 85807, at *3-4 (Iowa Ct. App. Jan. 9, 2013).

       *1.     Iowa Administrative Code rule 876-5.9(1)(2).* With respect to the first provision—whether the petition "contain[s] facts sufficient to demonstrate that the petitioner will be aggrieved or adversely affected by the failure of the workers' compensation commissioner to issue an order"—the Respondents assert "the Core Group did not, and could not, demonstrate that it had a specific legal interest or that it would suffer a specific injury if the Commissioner declined to rule on its Petition." *See* Iowa Admin. Code r. 876-5.9(1)(2). The Respondents' argument has superficial appeal under our traditional standing rules. But a petition for an administrative declaratory order is not the same animal as a civil petition.

       As noted, section 17A.9(1)(a) authorizes "[a]ny person" to file a petition for declaratory order. The statute defines "person" broadly as "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency." Iowa Code § 17A.2(9). Allowing a large universe of potential filers serves the purpose of declaratory orders. As the principal drafter of the Iowa Administrative Procedure Act explained, these orders are designed to permit persons to seek formal opinions on the effect of future transactions and arrange their affairs accordingly. *See* Bonfield, 60 Iowa L. Rev. at 807. Because they are a means to "obtain binding advice where it is necessary or helpful for [persons] to conduct their

affairs in accordance with law," agency rules may not define "the classes of persons who may seek such rulings too narrowly." *Id.* at 812. Professor Bonfield acknowledged agencies might want to "require some sort of standing to obtain a declaratory ruling," but insisted an "overly technical" standing requirement posing a "substantial hurdle" and "frustrat[ing] the purpose of the provision" would be "invalid as ultra vires agency authority." *Id.* at 812-13.

A stringent standing requirement also is inconsistent with the precept that declaratory orders may be based on hypothetical facts. *Id.* at 812; *see also Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 647-48 (Iowa 2013) (essentially presuming environmental organization could seek a declaratory order before an agency); *Tindal v. Norman*, 427 N.W.2d 871, 873 (Iowa 1988) (stating declaratory order proceeding "contemplates rulings on purely hypothetical sets of facts"). Because a real controversy is not essential, traditional standing requirements have no place in administrative declaratory order proceedings.

We turn to the allegations in this proceeding. The Core Group sought to address an accepted and routine practice in workers' compensation litigation: the surveillance of employee-claimants. As the commissioner explained,

> Core Group has an interest in workers' compensation cases as it applies to injured workers and the members themselves are employees who work in the state of Iowa. The members of Core Group frequently represent injured workers in contested cases when surveillance is used by employers and insurance carriers. Attorneys routinely use discovery in contested cases before the division. Discovery disputes are quite common. Attorneys representing claimants and Respondents frequently file motions concerning discovery. The timing of disclosure of exhibits and evidence is a frequent issue in arbitration hearings.

While Core Group members did not assert they were individually aggrieved, nothing in section 17A.9 requires personal injury or harm as a predicate to filing a petition for declaratory order. The Core Group's assertions were consistent with its mission and were sufficient to conclude the agency did not abuse its discretion in declining to invoke the "aggrieved or adversely affected" ground of rule 876-5.9(1)(2).

2. *Iowa Administrative Code rule 876-5.9(1)(5).* The Respondents next contend the commissioner abused its discretion in ruling on the petition because the "questions presented by the petition would more properly be resolved in a different type of proceeding or by another body with jurisdiction over the matter." Iowa Admin. Code r. 876-5.9(1)(5). "The general rule with regard to decisions of this type is that "the choice . . . is one that lies primarily in the informed discretion of the administrative agency." *Teleconnect Co. v. Iowa State Commerce Comm'n*, 366 N.W.2d 515, 519 (Iowa 1985) (citing Bonfield, 60 Iowa L. Rev. at 925) (discussing agency's choice between rulemaking and contested cases).

A request for an interpretation of section 85.27(2) is precisely the type of issue lending itself to resolution by declaratory order. In Professor Bonfield's words, the agency-issued declaratory ruling is a means of obtaining "[a] definitive response to a simple question about an ambiguity in the law." Bonfield, 60 Iowa L. Rev. at 805. This is all the Core Group seeks.

We recognize the issue the Core Group raised by way of a petition for declaratory order was previously raised in individual contested cases. However, nothing precluded the Core Group's efforts to obtain a broader resolution via a

declaratory order. *See id.* at 820 ("[T]he framers . . . intended to make it difficult rather than easy for agencies to decline to issue such a ruling.").

Nor was the commissioner required to interpret section 85.27 by rule rather than declaratory order. While the Respondents emphasize the "built-in procedural protections" attending rulemaking proceedings, which "ensure broad participation by all interested parties," the commissioner afforded similar protections in this declaratory order proceeding by identifying groups having a stake in the order and inviting them to intervene.

We conclude the commissioner did not abuse his discretion by refusing to find a different vehicle to address the issue.

**3. *Iowa Administrative Code rule 876-5.9(1)(9).*** The Respondents finally contend the commissioner should have declined to issue a declaratory order because such an order "prejudices Respondents in pending or future workers' compensation litigation who were not parties to the [action], but who have conducted surveillance in reliance on the expectation it would be protected from discovery under the prior interpretation of applicable law and procedure." This argument implicates Iowa Code section 17A.9(1)(b)(2) as well as Iowa Administrative Code rule 876-5.9(1)(9). Professor Bonfield generally addressed this argument as follows:

> One might argue that since such rulings are typically issued only with reference to the petitioning parties, they are not "rules" . . . *because they are not of general applicability*. . . . The ruling does not purport to be of general application. Thus, *there is no irreparable harm done by failing to assure public participation in the making of such rulings* because in fact they are only of particular applicability; they are in the nature of individual adjudications.

Bonfield, 60 Iowa L. Rev. at 836 (emphasis added). By the Respondents' own admission, their groups include attorneys representing the majority of workers' compensation defendants in Iowa. The declaratory order does not purport to bind the few attorneys outside these groups.

We conclude the commissioner did not abuse his discretion in deciding to rule on the petition for declaratory order.

### B. Commissioner's Interpretation of Section 85.27(2)

Iowa Code section 85.27(2) states in its entirety:

> Any employee, employer or insurance carrier making or defending a claim for benefits agrees to the release of all information to which the employee, employer, or carrier has access concerning the employee's physical or mental condition relative to the claim and further waives any privilege for the release of the information. The information shall be made available to any party or the party's representative upon request. Any institution or person releasing the information to a party or the party's representative shall not be liable criminally or for civil damages by reason of the release of the information. If release of information is refused the party requesting the information may apply to the workers' compensation commissioner for relief. The information requested shall be submitted to the workers' compensation commissioner who shall determine the relevance and materiality of the information to the claim and enter an order accordingly.

The Respondents take issue with the commissioner's interpretation of section 85.27(2) to include surveillance materials. "[W]e will substitute our own interpretation of the provision if we find the commissioner's interpretation was erroneous." See Burton v. Hilltop Care Ctr., 813 N.W.2d 250, 261 (Iowa 2012). In other words, our review is for errors of law. See Iowa Code § 17A.19(10)(c).

As noted, the statute relates to information "concerning the employee's physical or mental condition." Iowa Code § 85.27(2). The commissioner preliminarily concluded "[s]urveillance materials in workers' compensation claims

concern a claimant's physical or mental condition." The commissioner reasoned that they were not "used for any other purposes in contested claims before the division." The Respondents do not seriously dispute this preliminary conclusion.

The statute next states the litigants agree to "the release of all information" to which they have "access" concerning the employee's physical or mental condition. *Id.* The Respondents contend this language only applies "to information . . . held by third parties (i.e. medical records, bills, and treating and/or expert physician reports)." The commissioner concluded otherwise, stating:

> While Iowa Code section 85.27(2) does apply to medical evidence and information held by third parties, it is not so limited. The law requires release of all information concerning a claimant's physical or mental condition. The section of the law references all information an employee, employer, or insurance carrier has access to concerning a claimant's physical or mental condition. This is not limited to evidence held by third parties.

The commissioner's conclusion flows from the unambiguous terms, "all", "information," and "access." *See Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 25 (Iowa 1999) ("When the text of the statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute."). The term "all" is an "all" encompassing word which brooks no limits. Similarly, "information" is broad enough to include video surveillance footage. As for the term "access," there can be no question the Respondents had the ability to obtain the surveillance information they requested and authorized. No interpretation of section 85.27(2) is required to conclude

surveillance materials fall within the phrase "all information" to which the employer has "access."[2]

This brings us to the key question—whether surveillance materials are subject to "release." "Release" is defined as "to set free" or "to give up in favor of another." Webster's New Collegiate Dictionary 968 (1981). The Respondents, citing Iowa Code section 622.10 on "release" of medical records, argue this term applies exclusively to third-party disclosure of medical records. In their view, the legislature would have used the term "production" rather than "release"—as it did in discovery rules 1.509(3) and 1.512—had it intended the provision to require the disclosure of surveillance footage. Iowa R. Civ. P. 1.509(3), 1.512.

This constrained reading of "release" is not supported by the balance of the sentence and, in particular, the reference to "all information." This reading also is not supported by the next sentence in section 85.27(2), which states "[t]he information shall be made available to any party or the party's representative upon request." Clearly, "release" means disclosure to the other parties in the workers' compensation proceeding. The term is part of a broad discovery rule designed to "foster and encourage a ready access to the information necessary to speedily process workers' compensation claims." *Morrison v. Century Eng'g*, 434 N.W.2d 874, 877 (Iowa 1989). The Respondents' narrow reading fails to honor the legislature's intent to "provide[] for the free flow of information regarding a worker's physical or mental condition relative to a compensation claim." *Id.* at 876.

---

[2] Because the statutory language is plain and unambiguous, we will not use the legislative history of the provision to defeat the plain words of the statute. *Stroup v. Reno*, 530 N.W.2d 441, 443-44 (Iowa 1995).

We recognize the commissioner previously required disclosure of surveillance materials only after the claimant was deposed. In the Respondents' view, the commissioner acted arbitrarily in declining to hew to this practice. They cite Iowa Code section 17A.19(10)(h), which authorizes judicial review of agency action "other than a rule that is inconsistent with the agency's prior practice or precedents, unless the agency has justified that inconsistency by stating credible reasons sufficient to indicate a fair and rational basis for the inconsistency."

This provision has been construed narrowly. In *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 332-33 (Iowa 2005), the Iowa Supreme Court stated,

> [t]he controlling legal standards are those set out in the workers' compensation statutes and in this court's opinions, not in prior agency decisions. . . . We do not believe that Iowa Code section 17A.19(10)(h) establishes an independent requirement that the commissioner identify other agency rulings and explain possible inconsistencies between those rulings.

Notwithstanding the absence of an obligation to distinguish prior agency precedent, the commissioner did so. The commissioner explained that prior contested case decisions cited by the Respondents did not address the language of section 85.27(2). The commissioner also addressed the timing of disclosure discussed in prior agency decisions and the claimed deprivation of the element of surprise if disclosure of the surveillance materials were required before a deposition of the claimant. The commissioner stated:

> Modern rules of discovery seek to avoid surprise as a tactic in litigation. The purpose of discovery rules in litigation is to remove the element of surprise by letting each side know the available evidence. Such policy drives parties to resolution of their matters sooner rather than later based upon information readily available to all parties—as opposed to non-disclosure and later seeking

surprise. A claimant can be questioned about her or his activities and how it compares to the activities shown in surveillance materials. An implausible answer as to why a claimant was shown in surveillance performing certain physical activities will still impeach a claimant's testimony.

The commissioner's reasoning comports with the Iowa Supreme Court's longstanding disapproval of litigation by surprise. *See Blink v. McNabb*, 287 N.W.2d 596, 600 (Iowa 1980) (stating "a major goal of the discovery rules" is prevention of "surprise"); *accord Hagenow v. Schmidt*, 842 N.W.2d 661, 671 (Iowa 2014); *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 386 (Iowa 2012). "Gotcha" litigation is no longer sanctioned. Because the commissioner provided "credible reasons sufficient to indicate a fair and rational basis for the inconsistency with prior practice and precedent," we conclude section 17A.19(10)(h) was not violated. Iowa Code § 17A.19(10)(h).

We are left with the Respondents' assertion that the commissioner's interpretation "destroys attorney work-product privilege." The Respondents cite Iowa Rule of Civil Procedure 1.503(3), which "creates a qualified privilege for trial preparation materials." *See Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 43 (Iowa 2004). In their view, "[t]he mere fact that the surveillance has occurred, if disclosed prior to the injured worker's deposition, informs the injured worker that the employer and insurer is aware of potential non-compliance with work restrictions or activities inconsistent with alleged injuries." But an employee's awareness is immaterial to the work-product privilege. The privilege turns on whether the tapes are prepared in anticipation of litigation (no one disputes they are) and, as the Respondents acknowledge, whether they disclose the "mental impressions, conclusions, opinions, or legal

theories of an attorney or other representative of a party concerning the litigation." Surveillance, by itself, implicates none of these concerns; it discloses the claimant's condition—nothing more, nothing less. *See Wegner v. Cliff Viessman, Inc.*, 153 F.R.D. 154, 159 (N.D. Iowa 1994) (finding surveillance information was otherwise discoverable as probative of the physical condition of the plaintiff, noting work-product protection was designed to prevent "unwarranted inquiries into the files and mental impressions of an attorney," and then stating, "Surveillance materials are certainly prepared in anticipation of litigation. . . . It is simply too great a stretch to say, however, that opinion work product is also thereby revealed.").[3] The Respondents may use the surveillance footage to denigrate claims of disability but the footage alone does not reveal the mental impressions of an attorney.

More to the point, even if surveillance footage is characterized as "ordinary work product"—a term not used in Iowa precedent, and even if the footage includes opinion work product, section 85.27(2) states "[a]ny employee, employer or insurance carrier making or defending a claim for benefits . . . waives *any privilege* for the release of the information." Iowa Code § 85.27(2) (emphasis added). Arguably, then, the footage is discoverable notwithstanding its character as ordinary or opinion work product and notwithstanding rule 1.503(3). *See* Iowa Admin Code r. 876-4.35 ("The rules of civil procedure shall

---

[3] The court rejected the notion that surveillance footage was valuable only as impeachment evidence. Notwithstanding its creation in anticipation of litigation, the court stated, plaintiffs have a right "to discover the evidence that exists within the defendants' possession that will be available for use at trial." *Wegner*, 153 F.R.D. at 159. The court concluded, "[t]he purposes of just and speedy determination of matters on the merits will best be served by requiring disclosure of surveillance in response to discovery requests." *Id.* at 159-60

govern the contested case proceedings before the workers' compensation commissioner unless the provisions are in conflict with these rules and Iowa Code chapters 85, 85A, 85B, 86, 87 and 17A, or obviously inapplicable to the workers' compensation commissioner. In those circumstances, these rules or the appropriate Iowa Code section shall govern.").

The commissioner did not go this far. The commissioner elected to carve out an exception to disclosure of surveillance materials for "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." The commissioner stated, "A party may request that that information not be disclosed by following the procedures of Iowa Code section 85.27(2) or Iowa R. Civ. P. 1.503(5)(a)." In short, the commissioner reconciled rather than ignored the rule of civil procedure on opinion work product.

We recognize the commissioner placed the onus of asserting the work-product privilege on the party asserting it, which the dissent maintains is at odds with the language of section 85.27(2). We do not see any conflict. Section 85.27(2) simply states that if a party requesting information is denied the information the requesting party may seek relief from the commissioner. Because the requesting party cannot assert a privilege on behalf of the party with the undisclosed information, it would be incumbent upon the defense to raise any objections based on the work-product privilege after the requesting party has sought relief.

We conclude the commissioner's interpretation of section 85.27(2) to include surveillance materials, subject to an assertion of an opinion work product privilege was not erroneous. We affirm the declaratory order.

**AFFIRMED.**

Doyle, J., concurs; McDonald, J., concurs specially.

**MCDONALD, J.** (concurring in part, dissenting in part)

I concur the commissioner had the authority to proceed by way of declaratory order, but I respectfully dissent on the merits. The petition for declaratory order requested the workers' compensation commissioner answer ten interrelated questions regarding the discoverability of surveillance materials and reports prepared in defense of a workers' compensation claim and regarding the timing of production if discovery is allowed. In resolving this appeal, the majority lumps the questions and answers together, which seems reasonable and expeditious. Doing so, however, masks error that becomes apparent when the questions and answers are delumped. Specifically, the commissioner erred in holding section 85.27(2) applies to surveillance materials. The commissioner compounded this error by conflating two separate legal doctrines into something the commissioner denominated the "attorney-client work product privileged [sic]." Assuming the "attorney-client work product privilege[]" refers to the work product doctrine, the commissioner erred in holding that section 85.27(2) waives work product protection and that the party asserting work product protection must seek relief from the agency rather than vice versa. Finally, the commissioner erred in holding surveillance materials must be produced prior to deposition of the claimant.

I.

The first question presented to the commissioner related to the scope of section 85.27(2): "a) Is Iowa code § 85.27(2) applicable to surveillance in workers' compensation claims? Answer: Yes." The majority concludes the commissioner's interpretation is correct. I respectfully disagree.

We review the commissioner's interpretation of this provision for errors at law. *See Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). "Our goal, when interpreting a statute, is to give effect to the intent of the legislature." *Id.* at 197. In determining legislative intent, we examine the words of the statute "as well as the context of the language at issue." *Id.* In addition, we consider "the statute's subject matter, the object to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations." *State v. Lindell*, 828 N.W.2d 1, 5 (Iowa 2013).

The statute, when read in context, limits "all information" and "the information" to medical records and similar or related documents that typically, although not necessarily, would be held by third parties. The statute repeatedly refers to the parties' "access" to information and "the release" of information, both of which imply "the information" refers to medical records and similar or related documents typically held by third-parties and not records created by the parties. Section 85.27(2) also waives criminal and civil liability for "the release" of "the information." Again, this implies "the information" refers to medical records and similar or related documents typically held by third-parties and not records created by the parties.

Legislative history supports this interpretation. In 1976, the legislature added what is now subsection 2 as an unnumbered paragraph to section 85.27. *See* 1976 Iowa Acts ch. 1084, § 3. Unlike many acts in Iowa, this act was accompanied by legislative explanation. The legislature explained the act related to "the release of information concerning a person's past physical or mental

condition." The legislature's intent to facilitate the release of information related to the claimant's *past* physical or mental condition clearly excludes post-claim surveillance materials from the meaning of "all information" and "the information."

The consequence of the majority's interpretation militates against its interpretation and in favor of the more limited meaning the legislature actually intended. *See Lindell*, 828 N.W.2d at 5. Section 85.27(2) provides "[a]ny employee, employer, or insurance carrier making or defending a claim for benefits . . . waives any privilege for the release of the information." Under the legislature's intended meaning of the statute, as set forth in the prior paragraph, the statutory privilege waiver relates only to privileges associated with medical care because "the information" refers only to medical records and similar or related documents. Under the commissioner and the majority's interpretation, however, the statutory privilege waiver applies to all privileges because the commissioner and the majority interpret "the information" to include anything related to the claimant's physical or mental condition. Under the commissioner and the majority's approach, all employees, employers, and insurance carriers, merely by participating in a workers' compensation proceeding, waive the attorney-client privilege, the spousal privilege, and any other privilege heretofore or yet-to-be recognized, to the extent the privileged communication "concern[s] the employee's physical or mental condition." This consequence alone seems enough reason to limit the meaning of "all information" and "the information" to medical records and similar or related documents.

For the foregoing reasons, I conclude the commissioner erred in holding section 85.27(2) applies to surveillance materials and reports.

II.

The commissioner's second and third holdings related to the waiver of privileges:

> b) Pursuant to Iowa Code § 85.27, are all privileges waived with respect to surveillance videos and photographs showing the injured worker?

Answer: Yes, as to attorney-client work product privileged.

No as to mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

> c) Pursuant to Iowa Code § 85.27, are all privileges waived with respect to surveillance reports concerning the injured worker?

Answer: Yes, as to attorney-client work product privileged.

No as to mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The majority affirms the commissioner's interpretation of section 85.27(2), holding that section 85.27(2) waives work product protection. I conclude the commissioner's holding is muddled, predicated on a misunderstanding of the work product doctrine, and legally erroneous.

Before directly addressing the commissioner and the majority's holdings, it is necessary to provide background regarding the work product doctrine. The Iowa work product doctrine is codified in Iowa Rule of Civil Procedure 1.503(3). *See Keefe v. Bernard*, 774 N.W.2d 663, 673-75 (Iowa 2009). The doctrine protects from discovery and production materials prepared by an attorney, or the attorney's agent, in anticipation of litigation. "[W]hether a document was prepared in anticipation of litigation is determined by whether, in light of the nature of the document and the factual situation in the particular case, the

document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Wells Dairy*, 690 N.W.2d at 48. Although the doctrine has been applied in a variety of legal contexts, "[t]he essential element of each case . . . is that the attorney was preparing for or anticipating some sort of adversarial proceeding involving his or her client." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). There are two kinds of work product subject to protection: ordinary work product and opinion work product. Ordinary work product includes raw factual information and is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials . . . and . . . is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Iowa R. Civ. P. 1.503(3). Opinion work product consists of "the mental impressions, conclusions, opinions, or legal theories of an attorney." Iowa R. Civ. P. 1.503(3). Opinion work product enjoys almost absolute immunity, and is discoverable in only very rare and extraordinary circumstances.

The commissioner and majority's analysis of the work product doctrine goes astray, in part, by failing to recognize the distinction between ordinary work product and opinion work product. For example, the majority concludes surveillance footage is not work product subject to protection because surveillance footage does not reveal "trial strategy." That inquiry is relevant, however, only to the distinction between ordinary work product and opinion work product. As a general rule, surveillance video and photographs prepared in anticipation of litigation are deemed ordinary work product subject to qualified

protection.[4]  *See, e.g.*, *Marchello v. Chase Manhattan Auto Fin. Corp.*, 219 F.R.D. 217, 219 (D. Conn. 2004) ("However, because they are created after a party's injury and in anticipation of litigation, surveillance tapes generally are considered work product."); *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 670 (S.D. Cal. 2000) ("Numerous courts have held that surveillance films constitute work product and are subject to qualified immunity."); *Martino v. Baker*, 179 F.R.D. 588, 590 (D. Colo. 1998) ("The surveillance tapes are work product as they are tangible and prepared in anticipation of litigation.  Since the tapes do not contain the mental impressions, legal theories or conclusions of counsel, defendant may only claim a qualified privilege, which can be overcome by plaintiff's showing of substantial need."); *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 586 (S.D. Tex. 1996) ("Obviously, surveillance evidence is gathered in anticipation of litigation and thus is generally protected as work product."); *Ford v. CSX Transp., Inc.*, 162 F.R.D. 108, 110 (E.D.N.C. 1995) ("Surveillance materials are clearly within the definition of work product since they are tangible and were prepared in anticipation of litigation by or for a party to the litigation."); *see generally Squealer Feeds v. Pickering*, 530 N.W.2d 678, 688 (Iowa 1995) ("Documents prepared *after* the insured's claim has been denied are clearly not a contemporaneous record of events leading to the denial of the insured's claim.  After the claim has been denied, the insurer evaluates its action and prepares to defend its decision.  Documents prepared during that time are precisely the type of material sought to be protected from discovery by one's

---

[4] "Rule 1.503(3) . . . closely tracks Federal Rule of Civil Procedure 26(b)(3), and the history and cases under the federal rule provide guidance in interpreting the Iowa counterpart."  *Keefe*, 774 N.W.2d at 673-75.

adversary. We think an insurer is entitled to the same protection of this material under rule [1.503(3)] as any other party."), *abrogated on other grounds by Wells Dairy*, 690 N.W.2d at 38. With these general principles in mind, I directly address the agency decision and majority opinion.

The commissioner's ruling is legally erroneous because it conflates two separate legal doctrines—the attorney-client privilege and the work product doctrine—into something the commissioner called "the attorney client work product privilege[]." *See In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999) ("[The plaintiff] also invoked the work-product doctrine, which is broader than and distinct from the attorney-client privilege."); *Robbins v. Iowa-Illinois Gas & Elec. Co.*, 160 N.W.2d 847, 855-56 (Iowa 1968) (stating the work product doctrine is clearly distinguishable from the attorney-client privilege); *see also* Iowa Practice, Evidence § 5.502:21 ("The attorney-client privilege is distinct from the independent doctrine restricting discovery of the work product of opposing counsel."). There is no "attorney-client work product privilege[]." We should not affirm a declaratory order holding section 85.27(2) waives a non-existent privilege, particularly when the entire declaratory order appears predicated on this confusion.

The majority does not directly address this issue. Instead, the majority elides the problem by assuming the commissioner meant to refer to the work product doctrine. The assumption seems unwarranted; this does not appear to be scrivener's error; instead, it appears the agency simply confused two separate issues. At page seven of the declaratory order, the commissioner stated "the parties have also made as an issue whether section 85.27(2) would waive

attorney-client privilege." The parties did not raise the issue of attorney-client privilege, but they did raise the issue of work product protection. In the very next paragraph of the declaratory order, the commissioner stated "[t]he Supreme Court in *Squealer Feeds v. Pickering*, held that attorney-client privilege is applicable in workers' compensation proceedings." The commissioner then quoted language in *Squealer Feeds* regarding opinion work product and not the attorney-client privilege in conducting its analysis. Further, in response to the questions presented, the declaratory order concludes the "attorney-client work product privilege[]" is waived but in the next sentence states it is not waived "as to mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Based on the reasoning and language in the declaratory order, it seems the commissioner conjoined the attorney-client privilege and work product doctrine. We are only left to guess what the agency's order means, which militates in favor of reversal.

Setting aside this issue, the agency must be reversed for an additional reason: the commissioner erred in holding section 85.27(2) waives work product protection. The statute provides the parties' "waive[ ] any privilege for the release of the information." While I recognize some of our cases informally refer to the work product doctrine as a "privilege," it is not a "privilege." Rather, the cases that squarely address the rationale underlying the work product doctrine recognize that it is a qualified immunity from discovery governed by the rules of civil procedure:

> However, the work product of an attorney is clearly distinguishable from the attorney-client privilege. The two concepts often appear side-by-side in the cases since both may involve protection of trial

> preparations. The attorney-client privilege is, however, generally viewed as an evidentiary privilege belonging to the client and designed to encourage full disclosure by him to his attorney. On the other hand, the work product concept refers to material prepared or acquired in anticipation of litigation not necessarily privileged but immune from discovery under rule 141(a). Discovery of trial preparations which fall outside evidentiary privileges can be avoided only on the basis of protection furnished by discovery rules themselves.

*Robbins*, 160 N.W.2d at 855-56 (citation omitted); *see Keefe*, 774 N.W.2d at 673-75 ("Iowa Rule of Civil Procedure 1.503(3) codifies a qualified immunity from discovery of materials prepared in anticipation of litigation."); *Shook v. City of Davenport*, 497 N.W.2d 883, 886-87 (Iowa 1993) (explaining the doctrine is referred to as a privilege but is a "qualified immunity" from discovery), *abrogated on other grounds by Wells Dairy*, 690 N.W.2d at 38.

Federal authority recognizes the same distinction as our case law. *See, e.g., Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir.1993) ("This doctrine creates a form of qualified immunity from discovery for such materials."); *S.E.C. v. Goldstone*, CIV. 12-0257 JB/LFG, ___ F.R.D. ___ , 2014 WL 4347183, at *57 (D.N.M. Aug. 23, 2014) ("Because the work-product doctrine is a qualified immunity set forth in the Federal Rules of Civil Procedure, and not a privilege like the attorney-client privilege, the exceptions to the attorney-client privilege that developed in the common law do not necessarily overcome the protections which the work-product doctrine provides."); *Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 45 n.2 (W.D. Va. 2000) ("The work product doctrine is not a 'privilege,' but a sort of 'qualified immunity' from discovery, originally established in *Hickman v. Taylor*, and ultimately codified in Rule 26(b)(3)."). Indeed, in a federal case where jurisdiction is based on diversity of citizenship, the court will

apply state law concerning attorney-client privilege and federal law regarding work product doctrine because the work product doctrine is a rule of procedure and not a substantive privilege. *See* Fed. R. Evid. 501 Advisory Comm. Notes (requiring in civil actions where the rule of decision is supplied by state law, "the privilege of a witness . . . shall be determined in accordance with State law"); *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 627 (N.D. Iowa 2000).

Leading secondary authority also recognizes that the work product doctrine is not a "privilege." *See* 6 J. Moore & P. Higginbottom, *Moore's Federal Practice* § 26.70[1], at 26–435 (3d ed. 2010) ("The work product doctrine is not actually a privilege, but rather a qualified immunity from discovery."); 23 Am. Jur. 2d *Depositions and Discovery* § 44 ("Although sometimes classified as a privilege, the work product rule is not a privilege but is a qualified immunity from discovery, that may be overcome by a proper showing.").

The distinction is predicated on the different values underlying privileges, generally, and the work product doctrine. True privileges are designed to promote and advance certain relationships, such as lawyer-client, priest-penitent, and doctor-patient. *See* Edward J. Imwinklereid, *The Validity of the 2010 Federal Rule of Civil Procedure 26 Amendment Governing the Waiver of Work Product Protection: Is the Work Product Doctrine an Evidentiary Privilege*, 37 U. Dayton L. Rev. 279, 290 (2012). The nature of these protected relationships requires confidentiality to incent laypersons to avail themselves of these relationships without fear of exposure. *See id.* In addition, true privileges are also recognized to promote personal autonomy—that is, to allow laypersons to better exercise

personal autonomy by making more independent and better informed life decisions. *See id.* In contrast, the holders of the work product immunity are granted the immunity as functionaries in an adversarial legal system, primarily to render the system workable after the adoption of the rules of civil procedure, which increased the scope of pretrial discovery:

> The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

*Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947); *see id.* at 510 ("Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients."); Imwinklereid, 37 U. Dayton L. Rev. at 290. The commissioner and the majority's conclusion that the "privilege" waiver in section 85.27(2) waives the work product immunity is thus erroneous because the work product immunity is not a "privilege."

Even assuming the work product immunity is a "privilege," the commissioner further erred because the statutory privilege waiver does not apply

to the primary holder of the privilege. The statute provides "*[a]ny employee, employer or insurance carrier* . . . waives any privilege." Iowa Code § 85.27(2) (emphasis added). The statute makes no mention of the parties' respective attorney(s). It is widely held that "the work product privilege belongs to both the client and the attorney, either of whom may assert it." *In re Grand Jury Proceedings*, 561 F.3d 408, 411 (5th Cir. 2009). As a result, "a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa." *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994); *see also MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550 (S.D. Fla. 2013) ("Immunity from production of work-product materials may be asserted by either the attorney or the client, and each can waive that immunity, but only as to herself . . . ."). Thus, the commissioner erred in concluding that section 85.27(2) waives the work product immunity because the attorney also is entitled to assert the work product immunity, even contrary to the client in response to a discovery request.

For the foregoing reasons, I conclude the agency must be reversed with respect to these holdings.

III.

The commissioner's declaratory order next addressed the discovery of surveillance materials:

> d) Pursuant to Iowa Code § 85.27, are Defendants required to produce surveillance videos, photos, and/or reports when asked for in appropriate discovery requests?

> Answer: Yes. Pursuant to Iowa Code section 85.27(2) defendants may request the commission, or the commissioner's designee, to review the request and issue an order accordingly.

The majority concludes the commissioner's conclusions are without error. Again, I respectfully disagree.

The commissioner's conclusion that work product, even ordinary work product, is subject to discovery upon request and without the showing required under the rules of civil procedure is directly contrary to controlling authority. In *Squealer Feeds*, 530 N.W.2d at 688, the supreme court concluded "that a claimant is not entitled to obtain the file of his adversary . . . *merely upon request.*" (emphasis added)). The *Squealer Feeds* court reasoned as follows:

> Counsel should be allowed to amass data and commit his opinions and thought processes to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents *merely on request* and use them against his client.

*Id.* The court continued:

> The fact remains that [the insurer's] file compiled after the denial of [the] claim is no different and entitled to no less protection than the file of [the insured] and his attorney prepared during the same time frame. An insurer, no less than any other party, should be able to prepare its case free of concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents merely on request.

*Id.* The commissioner and majority's conclusion that work product—even ordinary work product—is subject to production upon request is directly contrary to this authority.

The commissioner and majority's conclusion that the party asserting the work product protection can obtain relief by requesting an order from the commission is also in error. First, this conclusion does not jibe with the commissioner and majority's holding that section 85.27(2) waives work product protection. If the statute waives work product protection, as they conclude, then

what relief is the party able to seek?  Second, this conclusion is directly contrary to the plain language of the statute, which provides: "If release of information is refused the party requesting the information may apply to the workers' compensation commissioner for relief."  The statute clearly provides that it is the party seeking the information that must come to the commissioner for relief after the opposing party's assertion of work product immunity.  The commissioner's declaratory order and the majority's opinion is thus contrary to the plain language of the statute.

For the foregoing reasons, the commissioner erred in concluding that surveillance materials prepared in anticipation of litigation are discoverable upon request and that the party claiming work product protection must seek relief from the agency.

IV.

The declaratory order next addressed the timing of the production of surveillance materials.

> e) Pursuant to Iowa Code § 85.27, are Defendants permitted to withhold surveillance videos, photos, and/or reports until after deposing the injured worker?

Answer: No.  Pursuant to Iowa Code section 85.27(2) defendants may request the commissioner, or commissioner's designee, to review the request and issue an order accordingly.

> f) Pursuant to Iowa Code § 85.27, when are Defendants required to produce surveillance videos, photos and/or reports?

Answer: Iowa Code section 85.27(2) states, The information shall be made available to any party or the party's representative upon request.  If a request is made pursuant to Iowa Code section 85.27, rather than through formal discovery, the period found in rule 876 IAC 4.17 shall apply.  The report must be served upon the opposing party within 20 day of filing an answer or if not then in possession within 10 days of receipt, if requested by claimant or claimant's

representative. If the request is made as a discovery request pursuant to the Iowa Rules of Civil Procedure, the periods set forth within the discovery rules shall apply.

The commissioner's holding with respect to these two questions is predicated on its erroneous legal conclusions that surveillance materials cannot be work product, whether ordinary or opinion, and that work product is waived in workers' compensation proceedings. Because of the commissioner's erroneous reliance on those two conclusions, it failed to consider these questions under the controlling rules of civil procedure. See Iowa Admin. Code r. 876-4.35 ("The rules of civil procedure shall govern the contested case proceedings before the workers' compensation commissioner unless the provisions are in conflict with these rules and Iowa Code chapters 85, 85A, 85B, 86, 87 and 17A, or obviously inapplicable to the workers' compensation commissioner. In those circumstances, these rules or the appropriate Iowa Code section shall govern.").

In analyzing the work product protection under the rules and relevant case law, I conclude that the employer or insurer in a workers' compensation proceeding should not be required to produce surveillance materials constituting ordinary work product until after the deposition of the claimant. Federal courts that have addressed this issue under the parallel Federal Rules of Civil Procedure have struck this balance after considering the competing interests of the parties. For example:

> Once it is conceded, as it must be, that not only those surveilled may be tempted to alter the truth, but that those conducting the surveillance may be subject to the same temptation, it becomes clear that surveillance information and material must be subject to discovery. Moreover, it cannot reasonably be argued that possibilities for impeachment presented by such evidence or, to the extent applicable, the work-product doctrine preclude

discovery. Finally, account must be taken of the fact that, if the adversarial process is to function efficiently, discovery must be accomplished at a time when opportunity exists to test, through further discovery, the manner and means by which the surveillance was conducted. Accordingly, in cases pending in this division in which surveillance material and information are sought in discovery, the surveilling party shall, after the passage of sufficient time for deposing those surveilled, make available for inspection and copying all films and tapes taken in connection with the surveillance. If inquiry is made, that party shall also provide the name and address of any individuals conducting the surveillance, the date or dates on which films or videotapes were taken and an indication as to whether or not a written report exists with respect to such surveillance.

*Boyle v. CSX Transp., Inc.*, 142 F.R.D. 435, 437 (S.D. W.Va. 1992). Similarly:

Defendant's argument against discovery of surveillance materials has the appeal that they would be used only if plaintiff lies or misleads in his testimony about the extent of his injuries, in which case he should bear the consequences of his perjury or misrepresentation. This assumes that only a plaintiff might attempt to mislead the court. However, the court's neutrality precludes any such biased assumption. From the bench's point of view, the defendant is just as likely to resort to chicanery as the plaintiff. Just as a plaintiff can lie or exaggerate, so can a defense surveillance film be distorted through photography or editing. Plaintiff hypothesizes that a film showing a plaintiff carrying a heavy load might be stopped so as not to show him grabbing his back in agony from the strain. The undersigned recalls a case in which a surveillance film showed an injured plaintiff to be engaged in activity (yard work) inconsistent with his claims of resulting disability. By learning of the film in advance of trial, however, he was able to produce records showing that following the activity he was forced to get medical treatment and was admonished by a physician not to do such work. Also . . . discovery of the materials would permit them to be studied before their use at trial to ensure that the photography was not misleading in any way.

The [order compelling production] balanced the needs of both parties by requir[ing] the production of the materials pursuant to discovery, but only after defendant had an opportunity to depose plaintiff, by video-deposition, if it so chose. . . .

. . . [A]llowing discovery of surveillance materials after the deposition of the plaintiff, but before trial, best meets the ends of justice and the spirit of the discovery rules to avoid surprise at trial.

*Ford v. CSX Transp., Inc.*, 162 F.R.D. 108, 111-12 (E.D.N.C. 1995). Likewise:

Accordingly, the Court believes that a reasonable compromise between the Plaintiff's interests and those of the Defendant is to require the Defendant to disclose, before the taking of the Plaintiff's deposition, the existence of any surveillance evidence of the Plaintiff and the date on which the surveillance was obtained, and to indicate whether the surveillance is in the form of film, videotape, or still photographs. However, the Defendant is not required to reveal the substance of the surveillance, where the surveillance was obtained, or the reason it was obtained. The actual surveillance evidence must be produced within thirty days after the Plaintiff's deposition has been taken.

*Diamond Offshore Drilling, Inc.*, 168 F.R.D. at 587.

Other courts have reached the same conclusion. *See Martino,* 179 F.R.D. at 590 ("To preserve the defendant's right to use the tapes as impeachment evidence, however, plaintiff's deposition is to be completed before the tapes are produced."); *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 59 (E.D. Pa. 1994) (stating general rule that "surveillance materials are discoverable, within the context of the attorney work product doctrine" but that "before any of these disclosures . . . the defense must be given an opportunity to depose the plaintiff fully as to her injuries."); *Daniels v. Nat'l R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (D.N.Y. 1986) (stating the same general rule).

The above-quoted and above-cited decisions balance three competing interests: the injured person's need to obtain information; the opposing party's right to prepare a defense to the claim; and the truth-seeking function of the administrative/judicial process. *See Ex Parte Doster Constr. Co., Inc.*, 772 So. 2d 447, 450-51 (Ala. 2000) (noting "the quest for the truth should be furthered through protecting the videotape before the employee is deposed"); *Wolford v. JoEllen Smith Psychiatric Hosp.*, 693 So. 2d 1164, 1167 (La. 1997) (explaining

"delaying the production of the videotape until after the plaintiff has been fully deposed aids in the search for the truth").

In reaching my conclusion, I also take guidance from the agency's practice and procedure prior to this case. Prior to this case, the agency recognized that surveillance materials are work product subject to protection. The agency balanced the competing interests of the claimant and the employer/insurer by requiring production of surveillance materials, but only after the claimant's deposition. *See Ramirez v. Riverview Care Ctr.*, File Nos. 1243830, 1253740, 1253741, 1253742, 1253743, 2002 WL 32125248, at *2 (Iowa Workers' Comp. Comm'n Aug. 2, 2002) ("Under the prevailing rule, surveillance materials may be withheld as privileged work product for a reasonable time until the party observed can be deposed or otherwise compelled to take a position on the facts pertinent to the surveillance."); *Hansen v. Graham Constr.*, File No. 1171846, 2000 WL 33992554, at *8 (Iowa Workers' Comp. Comm'n Dec. 28, 2000) (stating that it was not improper for the employer to withhold such documents until after deposition); *Hoover v. Iowa Dep't of Agric.*, File No. 529205, 1993 WL 13021598, at *4 (Iowa Workers' Comp. Comm'n April 30, 1991) (approving defendant's withholding of surveillance material from disclosure in discovery until after the claimant's deposition "to protect the impeachment value of the evidence until after claimant's deposition, where sufficient time remained before hearing for claimant to avoid prejudice by examining the evidence and cross-examining the surveillance witnesses"). It was only the commissioner's erroneous conclusions regarding the scope of discovery and waiver under section 85.27(2) that

convinced the commissioner to break from the agency's prior practice and procedure.

## V.

I need not address the remainder of the questions presented to the agency or the agency's answers to the same, as they are all contingent on or interrelated with the errors discussed above. I would reverse the judgment of the district court and remand this matter for further proceedings.